UNITED STATES of America,
Plaintiff-Appellee,

v.

Frank AGOSTINO, Defendant-Appellant.

No. 79–5176
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Dec. 26, 1979.
Rehearing Denied Feb. 14, 1980.

Angus M. Stephens, Jr., Coral Gables, Fla., for defendant-appellant.

Bruce A. Zimet, Linda Collins Hertz, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before BROWN, TJOFLAT and FRANK M. JOHNSON, Jr., Circuit Judges.

JOHN R. BROWN, Circuit Judge:

Defendant appeals from conspiracy and drug convictions, seeking to unravel the strands of probable cause for his arrest and

---

* Fed.R.App.P. 34(a); 5th Cir. R. 18.

to undo the seizure of contraband in plain view. We hold the cloth of probable cause duly woven, and the seizure proper, and affirm.

### The Warp Of Fact—Car Roosting And Rousting

In this case the spindle is thread with an undercover scheme to purchase two kilograms of cocaine. A surveillance team was used as part of the pattern to observe the comings and goings in the area of the suspected drug activity.

In the evening of the intended purchase a small Pontiac Sunbird and a Thunderbird were observed together arriving at and leaving from a residence. The driver of the Thunderbird was later determined to be the defendant in this case, Frank Agostino. Later, when the evening had turned into early morning, these same two cars were again seen together. This time they were spotted in a parking lot of a closed country store. The lot was located not far from a trailer home inhabited by William Tobin, where the drug exchange was to occur.[1]

The small Pontiac was then seen arriving at Tobin's trailer. A woman, later identified as Debra Taylor, "the girl" and the "girlfriend of the source," got out of the Pontiac. She brought an ounce of cocaine into the trailer to sample. While the Pontiac remained at the trailer, a Thunderbird cruised the area.

In Tobin's trailer, Taylor told Agent Vincent Mazzilli that "her man" wanted her to deliver only half a kilo and the remaining kilo and a half later that evening. Taylor then left the trailer, explaining to Mazzilli that she would return in ten minutes with the half kilogram.

Taylor's Pontiac was next observed returning to the country store parking lot.

The Thunderbird parked next to the Sunbird a few minutes later. The two cars left the country store together. They were next observed at about midnight parked across from each other on a "farm street" consisting mostly of "farm fields and trees."

As promised, ten or fifteen minutes later Taylor returned to the trailer in her Sunbird and delivered a half kilogram of cocaine to Mazzilli. Taylor said she needed payment for the half kilo to "take back to her man," and then he would provide the remaining kilo and a half. At this point, Taylor and Tobin were arrested.

The surveillance team was then directed to stop the Thunderbird. They followed the Thunderbird to the parking lot of the country store. Two policemen in an unmarked vehicle pulled their car up to the Thunderbird. One policeman held his badge up to the window, advised the driver, defendant-Agostino, he was a police officer and told Agostino to pull over. Agostino increased his speed through the parking lot "spinning his tires."

Agostino lost control of his car and his car was pinned between a tree and the police car. The driver of the police car was injured and knocked unconscious.

Agostino left his car and was arrested.[2] The car door remained open with the interior light on. One agent looked into the front seat of the Thunderbird from outside the car and noticed an overturned cigar box, exposing a bag of white powder on the floor. The white powder was later determined to be cocaine.

Agostino was advised of his rights and taken to the police station. He was charged with several drug and drug-related offenses.[3] He moved to suppress the co-

---

1. Three of the letters of the license plate had been noted when the car was seen at the residence and matched the tag of the car observed in the parking lot.

2. The evidence is inconsistent as to the precise circumstances of Agostino's arrest. One agent said that he helped Agostino out of his car. Another agent testified that Agostino was get-

ting out of his car as the agent exited his car. Our resolution would not differ under either variation.

3. Agostino was charged with one count of conspiracy to distribute cocaine in violation of 21 U.S.C.A. § 846, two counts of distribution of cocaine in violation of 21 U.S.C.A. § 841(a)(1)

caine but the motion was denied after a hearing. The District Court ruled that there was probable cause for the arrest and the evidence was properly seized since it was in plain view at the time of the arrest. Agostino waived his right to a jury trial and special findings of fact. After some additional facts were stipulated, both the Government and Agostino rested on the testimony presented at the suppression hearing. The Court found Agostino guilty on all counts. Agostino appeals the denial of his motion to suppress.

### The Woof of Law—A Collective And Plain View

■ We turn our shuttle to the law of probable cause. As we have stated and restated, probable cause for an arrest is formulated when reasonably trustworthy facts and circumstances are within the knowledge of the arresting officer to warrant a man of reasonable caution in the belief that an offense has been or is being committed. *Draper v. United States*, 1964, 358 U.S. 307, 313, 79 S.Ct. 329, 3 L.Ed.2d 327. And, where there is at least minimal communication between different officers, we look to the "collective knowledge" of the officers in determining probable cause. *United States v. Vasquez*, 5 Cir., 1976, 534 F.2d 1142, 1145, *cert. denied*, 1976, 429 U.S. 979, 97 S.Ct. 489, 50 L.Ed.2d 587; *United States v. Nieto*, 5 Cir., 1975, 510 F.2d 1118, 1120, *cert. denied*, 1975, 423 U.S. 854, 96 S.Ct. 101, 46 L.Ed.2d 78. While we are loathe to expand exceptions to the warrant requirement, see *Arkansas v. Sanders*, 1979, —— U.S. ——, 99 S.Ct. 2586, 61 L.Ed.2d 235, a showing of probable cause requires much less evidence than a finding of guilt, *United States v. Beck*, 5 Cir., 1970, 431 F.2d 536, 538. Probable cause must be judged not with the logic of cold steel, but with a common sense view to the realities of everyday life. *Brinegar v. United States*, 1949, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879, 1890.

■ Our probable cause is loomed from threads of three different kinds. The first strand is the repeated car associations. As we have previously observed, "Although observation of two cars in proximity on a sparsely traveled road does not itself justify a stop, it may understandably raise the officer's suspicions." *United States v. Barnard*, 5 Cir., 1977, 553 F.2d 392; *United States v. Larios-Montes*, 5 Cir., 1974, 500 F.2d 941, 943, *cert. denied*, 1975, 422 U.S. 1057, 95 S.Ct. 2681, 45 L.Ed.2d 709. Here, Taylor, a known drug supplier, told the undercover agents that she needed to obtain the cocaine from her source. Within the course of a few hours a Thunderbird, later determined to be driven by Agostino, was observed meeting with Taylor's car four times. The cars were first seen together at a residence near the location of the drug transfer. Second, just before Taylor delivered the cocaine sample to Agent Mazzilli, the cars were observed together at a country store nearby. Third, after the sampling Taylor said she would bring additional cocaine and met the Thunderbird again. Fourth, the cars were observed parked on an empty "farm street," after which Taylor returned to the trailer park and delivered one half kilogram of cocaine. These car associations, in the context of an ongoing drug transaction, comprise the first threads of probable cause.

The time of day and setting provide texture to our probable cause. Three of the four meetings between the Thunderbird and Pontiac occurred around midnight or later. The convenience store, at which two of the rendezvous took place, was closed and the parking lot empty. Another encounter occurred on a "farm street [with] maybe two houses in that whole thing." The lateness of the hour, the rural, unpopulated setting, with an illicit drug transfer afoot, provides additional weave to our fabric of probable cause. See *United States Vasquez*, 534 F.2d at 1145; *United States v. Pearson*, 5 Cir., 1971, 448 F.2d 1207, 1212.

and 18 U.S.C.A. § 2, and three counts of possession with intent to distribute cocaine in vio-

lation of 21 U.S.C.A. § 841(a)(1) and 18 U.S.C.A. § 2.

Agostino's attempted flight at the convenience store adds further braid to the cloth. When one of the policemen held up his badge to Agostino from an adjacent car, Agostino accelerated his car in attempt to flee. As we have stated several times: "While flight from a law enforcement officer cannot support alone a determination of probable cause, flight can provide in appropriate circumstances the key ingredient justifying the decision of a law enforcement officer to take action." See *United States v. Jacquillon*, 5 Cir., 1972, 469 F.2d 380, 385; *United States v. Vasquez*, 534 F.2d at 1145. Interlacing all of these ingredients in a common sense fashion, we rule the probable cause formula to be satisfied and the arrest of Agostino valid.[4]

■ The warrantless seizure of inadvertently discovered cocaine in plain view was also proper. See *Harris v. United States*, 1968, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (per curiam); *Ker v. California*, 1963, 374 U.S. 23, 42–43, 83 S.Ct. 1623, 1634–1635, 10 L.Ed.2d 726, 743–44. Here, the cocaine was plainly in plain view. As one agent testified:

> We had him out on the side of the car toward the back window. The door was open. The window was down. I looked into the front seat from outside the car and there was a cigar box that was overturned on the floor of the passenger's side . . . the lid was open, it was sort of a pyramid, and there was a bag of white powder in it which was half in and half out of the box on the floor.

■ Or, the seizure was justified as incident to a valid arrest under *Chimel v. California*, 1969, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685. With Agostino sitting on the front seat of the car or leaving it, the floor of the front seat was within his immediate control. The search and seizure of contraband from the car floor were reasonably limited in scope to prevent the destruction of evidence or to foreclose the possibility of

Agostino gaining possession of a weapon from the car.

The repeated car associations during an ongoing drug transaction, in a rural, unpopulated setting, late at night, coupled with Agostino's attempted flight form our fabric of probable cause. In plain view or as incident to a lawful arrest, the cocaine was validly seized. The motion to suppress was properly denied.

AFFIRMED.

---

4. Since we find sufficient probable cause for the arrest, we need not reach Agostino's further argument that the search exceeded the reasonable scope of a stop within the meaning of *Terry v. Ohio*, 1968, 382 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 or *Canal Zone v. Bender*, 5 Cir., 1978, 573 F.2d 1329.