IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

NO. 91-4762
_____

UNITED STATES OF AMERICA

Plaintiff - Appellant

v.

KYE SOO LEE, MIN HO CHAY,
and MIN SIK LEE

Defendants - Appellees

_____

Appeal from the United States District Court
for the Western District of Louisiana
_____

( May 22, 1992 )

Before GARWOOD and DeMOSS, Circuit Judges, and SCHWARTZ, District
Judge.[1]

SCHWARTZ, District Judge:

The Government appeals the judgment of the district court on
remand, granting the defendants' motion to suppress predicated on
its findings of lack of defendants' consent to accompany officers
to state police headquarters and the absence of probable cause to
arrest. We reverse and remand.

_____

[1] District Judge of the Eastern District of Louisiana,
sitting by designation.

1

FACTS AND PRIOR PROCEEDINGS

The story of Kye Soo Lee, Min Ho Chay (Chay) and Min Sik Lee's indictment for trafficking counterfeit goods in violation of Title 18, United States Code, Section 2320 begins on May 27, 1988, at approximately 5:50 p.m., when Louisiana State Trooper Bruce Vanderhoven (Vanderhoven), was patrolling westbound Interstate 20 (I-20) near Bossier City, Louisiana.  A Ryder rental truck driven by Chay captured his attention, since it was swerving in and out of traffic without signalling, thus creating a traffic hazard.

Utilizing the emergency lights on his patrol car, Vanderhoven pulled the defendants' truck over to the shoulder of I-20.  Prior to exiting his patrol car, he radioed a description of the truck and its license number to state police headquarters which was less that a mile away.  State Trooper Archie Griffin received the transmission at headquarters and proceeded to the scene to lend assistance.

When Vanderhoven approached the Ryder truck, Chay was in the driver's seat and was unable to produce any driver's license or other identification.[2]  He was wearing a paging device and a "Gucci" baseball cap.  Chay informed Vanderhoven that his passenger, Kye Soo Lee rented the Ryder truck.  After "frisking" Chay and finding nothing, Vanderhoven asked Chay to have a seat in

---

[2]  Chay claimed to hold a valid Texas driver's license. Vanderhoven later confirmed that an individual by the name of Min Ho Chay held a valid driver's license in the state of Texas. However, without any identification on Chay whatsoever, Vanderhoven had no way of knowing that he was in fact the same Min Ho Chay.

the patrol car.

Vanderhoven then approached Chay's passenger, Kye Soo Lee, who was the purported renter of the Ryder truck. Vanderhoven then attempted to verify information gleaned from Chay with Kye Soo Lee. His attempt was unsuccessful as Kye Soo Lee could neither speak nor read English.[3] So, Vanderhoven brought Chay back to the truck and asked Chay to assist him in communicating with his passenger, with which request Chay complied. With Chay translating, Vanderhoven was successful in obtaining identification from Kye Soo Lee - that is, his driver's license and Social Security card.

Upon further questioning by Vanderhoven, Kye Soo Lee stated that a third party Min Sik Lee had rented the Ryder truck, which was at odds with Chay's story. Upon the initial "frisk" of Kye Soo Lee, Vanderhoven felt what later turned out to be a large wad of currency in his pant's pocket. At that point Vanderhoven radioed for assistance, thinking it prudent to have a back up present before removing what he thought might be currency from Kye Soo Lee's pocket. While awaiting the arrival of back up, Vanderhoven had Kye Soo Lee seat himself in the patrol car alongside of Chay.

Upon further questioning prior to the arrival of the back up unit, Chay informed Vanderhoven of the rental agreement's location on the dashboard of the truck. The rental agreement indicated that a third party Min Sik Lee was the lessee of the Ryder truck, contra Chay's earlier statement.

---

[3] Both Chay and Kye Soo Lee are Korean.

State Trooper Griffin arrived at the scene approximately ten minutes after the initiation of the stop. After Griffin's arrival, Vanderhoven again "frisked" Kye Soo Lee, noting that the bulk of what was he earlier surmised was a roll of currency had diminished considerably over the short period of time that Kye Soo Lee occupied his patrol car with Chay while awaiting assistance. The then smaller bulge removed from Kye Soo Lee's pants pocket proved to be a roll of United States currency. The missing bulk of currency was recovered from Chay. The previous "frisk" of Chay's person revealed nothing. In other words, all of the money that Vanderhoven felt in Kye Soo Lee's pants pocket upon his initial "frisk" had been split up between the two of them while they occupied the patrol car together. Between the two, Vanderhoven confiscated an unusually large amount of cash, $8,900.26 to be exact.

Chay then gave Vanderhoven the "okay" to search the truck, but indicated that neither he nor Kye Soo Lee, knew what was in the truck nor did they have a key to the cargo section of the truck. Contrary to that statement, in Vanderhoven's clear view was the key that appeared to fit the door's lock. It was on the same key ring as the ignition key.

Vanderhoven then opened the truck and found boxes, some of which had spilled open which contained "Gucci" baseball caps and "Louis Vuitton" handbags. The "Gucci" cap which Chay was wearing when the truck was stopped was just like those contained in the boxes which spilled open and about which Chay previously claimed no

4

knowledge.

At this juncture, Trooper Don Campbell and Special Agent Terry Baldwin (Baldwin) of the Drug Enforcement Administration had arrived at the scene. Baldwin stated that he believed that the caps and handbags were "probably counterfeit" and "in the country illegally."[4] Vanderhoven was more concerned that Chay and Kye Soo Lee were transporting narcotics or weapons.

Considering that it was getting dark and that traffic was heavy on I-20 at the time,[5] the troopers decided it was much too hazardous to remain on the shoulder of I-20 to complete a thorough search of the myriad of boxes, 289 in all, which comprised the truck's cargo. Vanderhoven decided it would be safer for all concerned to continue the search of the truck at headquarters which was in their estimation only a short distance away. The duration of the roadside stop was no more than forty-five minutes.

Vanderhoven told Chay and Kye Soo Lee that he intended to take the truck to the police station to conclude the search and that they could accompany the truck to the station if they so chose. Vanderhoven remained in possession of Kye Soo Lee's identification and the currency confiscated from both Kye Soo Lee and Chay. They accompanied Vanderhoven to the station parking lot.

_____

[4] Transcript of the October 17, 1988 Suppression Hearing, pp. 90, 136 (Record, Vol. 4).

[5] Vanderhoven testified that there was quite a bit of traffic on the highway at the time, explaining that is was "racetrack traffic between the racetrack and Bossier City." Transcript, at p. 70 (Record, Vol. 4).

Once at headquarters, the officers unloaded the truck and the Bossier City drug sniffing dog sniff-searched the contents of the boxes and the truck's interior. Then Special Agent Jacques Duck of the Customs Agency arrived and examined the counterfeit merchandise found in the truck, i.e., the "Louis Vuitton" handbags and "Gucci" baseball caps.[6] Agent Duck concluded the merchandise was counterfeit as did SA Baldwin earlier at the roadside. Their conclusions were subsequently confirmed with the Customs Service Fraud Team in New Orleans.[7]

On June 23, 1988, a Federal Grand Jury indicted both Kye Soo Lee and Chay, along with the defendant Min Sik Lee, with conspiracy in violation of Title 18, United States Code, Section 371 and with trafficking counterfeit goods, 18 U.S.C. §2320. Prior to trial all of the defendants plead not guilty and filed motions to suppress the evidence seized during the search of the truck.

Concluding that all three defendants had standing to challenge the search, the district court granted their motions to suppress adopting the magistrate's October 28th, 1988 report and recommendation as its opinion in addition to holding that all three

---

[6] Vanderhoven testified that Duck and two or three other agents from Customs got samples/materials out of the handbags, examined them and concluded they were counterfeit. Transcript, at p. 91 (Record, Vol. 4).

[7] Agent Duck testified that he called Agent Lew Bock, who had worked several cases involving counterfeit Louis Vuitton merchandise, to get confirmation on what he knew. Transcript, at p. 195 (Record, Vol. 4).

defendants had standing to challenge the search.[8]

The Government appealed the district court's February 2nd, 1989 ruling on defendants' motion to suppress, which is the subject of an opinion of a prior panel of this Circuit. United States v. Kye Soo Lee, 898 F.2d 1034 (5th Cir.), reh'g denied, 905 F.2d 1536 (5th Cir. 1990). Therein, the prior panel held inter alia that the initial stop and detention of the defendants Lee and Chay was justified under Terry v. Ohio, and their consent to search the truck at the roadside was valid.[9] Thus, the panel reversed the original order of the district court suppressing the evidence and remanded the case for findings as to whether Chay and Kye Soo Lee consented to accompany the officers to the Louisiana State Police Headquarters and/or whether there was probable cause to arrest the pair at the roadside.[10]

On remand, the district court referred the matter to the magistrate for findings and a report and recommendation based thereon. All of the parties agreed that the issues were adequately

---

[8] See, Order and Reasons entered February 2, 1989 (Record, Vol. 2, Doc. No. 161).

[9] See, United States v. Kye Soo Lee, 898 F.2d 1034, 1040 (5th Cir. 1990) stating:
> We are persuaded that there was no illegal detention in this case. When Vanderhoven first pulled the Ryder truck over on the interstate highway, it was because the truck was weaving between lanes and speeding. Thus, the initial detention, as evaluated under Terry, was proper because Vanderhoven had reasonable articulable facts which warranted the intrusion.

[10] Id. at 1041.

addressed in the October 17th, 1988 suppression hearing and thus, there was no necessity for an additional hearing. On May 15th, 1991 the magistrate issued his findings with respect to the issues on remand.[11] The district court adopted the magistrate's May 15th, 1991 report and recommendation as its opinion and granted the defendants' motion to suppress finding neither probable cause to arrest nor valid consent to accompany the officers to state police headquarters.[12]

As to the existence of probable cause to arrest, the magistrate's May 15th, 1991 report merely refers to the reasons outlined in his prior report and recommendation, stating he "continues to believe no probable cause to arrest was present at the time the defendants were taken to the police station."[13] The magistrate concluded with the statement that he "would have never issued a search warrant to enter the truck based upon the evidence in possession of the police at that time."[14] This concluding remark reflects utter disregard of the exigencies/realities of a roadside stop as they unfold in a situation such as this, i.e., "that police officers, unlike . . . judges, must make probable cause determinations under the pressure of time and in the immediate

---

[11] See, Magistrate's Report and Recommendation, entered May 15th, 1991 (Record Excerpt No. 4).

[12] See, Judgement entered August 1, 1991 (Record Excerpt No. 3).

[13] See, supra note 11.

[14] Id.

8

context of fast-developing events."[15]

Moreover, the magistrate's May 15th report[16] wholly ignores certain facts which unquestionably materialized during the lawful roadside search as significant to the determination of probable cause to arrest in the case at bar, to wit: (1) Chay was wearing a "Gucci" baseball cap identical to those found in the truck during the roadside search; (2) both Chay and Kye Soo Lee lied about their knowledge of the commercial cargo and their ability to gain access to it; (3) neither Chay nor Kye Soo Lee could produce any evidence of written consignment or bill of lading with respect to the apparently expensive "designer" merchandise which comprised their load and which they were not inclined to abandon; (4) the method of packaging such merchandise for transportation was sloppy and haphazard - that is, inconsistent with the type of cargo; (5)

---

[15] United States v. Mendoza, 722 F.2d 96, 102 (5th Cir. 1983).

[16] The magistrate's initial report and recommendation entered October 28th, 1988, makes only one finding which bears on the issue of probable cause to arrest - which is, that none of the officers suspected the defendants' cargo was counterfeit merchandise. See, Magistrate's Report and Recommendation dated October 28th, 1990, at p. 4. (Record, Vol. 2, Doc. No. 150). The magistrate's finding in this regard is not supported by any evidence and is belied by the uncontroverted testimony of Vanderhoven that SA Baldwin stated at the roadside his belief that the merchandise was "probably counterfeit" and "in the country illegally." (Transcript, pp. 90, 134, 136). Moreover, the magistrate's report does recount that Agent Jacques Duck was present in the parking lot of the police station and made a determination there that the merchandise was counterfeit, which was later confirmed by Customs Service in New Orleans. See, Magistrate's October 28th, 1990 Report and Recommendation, supra, at pp. 5-6. These uncontroverted facts evidence that from the outset, a customs violation was considered highly likely, otherwise, Customs would not have been called into the investigation.

9

neither Chay nor Kye Soo Lee offered any explanation, much less any reasonable one, for their "secrecy" with respect to such cargo; and (6) neither Chay nor Kye Soo Lee could produce any documentation tending to establish any lawful connection with either the truck or its cargo either as consignee, lessee, or owner. All of the aforementioned facts are <u>significant</u> to any determination regarding the existence of probable cause to arrest at the roadside.[17]

In its Objection to the Magistrate's May 15th, 1991 Report and Recommendation (Record Excerpt No. 6) the Government conceded without further explanation that the defendants' consent to accompany the officers to the Louisiana State Police Headquarters was not voluntary. However, the Government asserted therein its original position that there was probable cause to arrest Chay and Kye Soo Lee when the truck's cargo doors were opened at the roadside revealing "probably counterfeit" merchandise - that is, at that point in time strong reasonable suspicion ripened into probable cause. As previously mentioned, the district court simply adopted the magistrate's May 15th report without addressing the Government's objections which were based on the undisputed facts

---

[17] Generally in reviewing a district court's ruling on a motion to suppress based on testimony at a suppression hearing, the reviewing court accepts the district court's factual findings unless they are clearly erroneous or influenced by an incorrect view of the law. <u>United States v. Maldonado</u>, 735 F.2d 809, 814 (5th Cir. 1984). However, in the instant case the factual findings predicate to the determination of probable cause are wholly absent. Where, as here, the determinative facts are undisputed, the question of whether or not they establish probable cause is a question of law freely reviewable on appeal. <u>See</u> <u>e</u>.<u>g</u>., <u>United States v. Martinez-Perez</u>, 941 F.2d 295, 297 (5th Cir. 1991).

reiterated above and which were not addressed by either of the magistrate's reports and recommendations in connection with a determination of lack of probable cause to arrest.

> [A] showing of probable cause requires much less evidence than a finding of guilt, United States v. Beck, 5 Cir., 1970, 431 F.2d 536, 538. Probable cause must be judged not with the logic of cold steel, but with a common sense view to the realities of everyday life. Brinegar v. United States, 1949, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879, 1890.

United States v. Agostino, 608 F.2d 1035, 1037 (5th Cir. 1979).

Because we have determined for the reasons set out herein below that probable cause to arrest developed at the roadside and thus, the district court erred in granting the motion to suppress, we need not and do not decide whether the defendants voluntarily consented to accompany the police officers to their headquarters and/or whether the Government waived its right to appeal that issue by conceding it to the district court.

## PROBABLE CAUSE TO ARREST

The Government argues that probable cause to arrest Chay and Kye Soo Lee existed when they opened the cargo section of the truck and it revealed "probably counterfeit" merchandise, i.e., the "Louis Vuitton" handbags and "Gucci" baseball caps. The Government concedes that Vanderhoven himself did not know all the facts constituting probable cause; rather, the Government argues that the arrest was legal because the collective knowledge of the agents working the case at the roadside amounted to probable cause to arrest the pair. We agree because it is clear to us that the collective knowledge of the officers working the case at the

11

roadside did establish probable cause to arrest the pair then and there.

Probable cause to arrest exists "where 'the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." United States v. Preston, 608 F.2d 626, 632 (5th Cir. 1979), cert. denied, 446 U.S. 940, 100 S.Ct. 2162, 64 L.Ed.2d 794 (1980)(quoting Draper v. United States, 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327 (1950)).

It is not necessary that the arresting officer himself have personal knowledge of all of the facts.  The Government correctly points out that "probable cause can rest upon the collective knowledge of the police, rather than solely on that of the officer who actually makes the arrest,' when there is 'some degree of communication between the two.'" United States v. Ashley, 569 F.2d 975, 983 (5th Cir.), cert. denied, 439 U.S. 853, 99 S.Ct. 163, 58 L.Ed.2d 159 (1978).

One scenario in which we have applied this "collective knowledge" doctrine, is where the arresting officer has personal knowledge of facts which standing alone do not establish probable cause for an arrest but, when added to information known by other officers involved in the investigation, tips the balance in favor

12

of the arrest.[18]  In such cases, the "laminated total" of the information known by officers who are in communication with one another must amount to probable cause to arrest.[19]

Unquestionably, no one item of the government's evidence, considered in isolation, would have been sufficient to justify a reasonable man in the belief that the truck in Chay and Kye Soo Lee's possession contained contraband.  Nonetheless, the totality of the circumstances, including the stated belief of DEA Special Agent Baldwin that the truck's cargo was "probably counterfeit" and "in the country illegally" did establish probable cause to believe that Chay and Kye Soo Lee were transporting seizable contraband.[20]

---

[18] See e.g., United States v. Nieto, 510 F.2d 1118, 1120 (5th Cir.)(per curiam), cert. denied, 423 U.S. 854, 96 S.Ct. 101, 46 L.Ed.2d 78 (1975); United States v. Agostino, 608 F.2d 1035, 1037 (5th Cir. 1979).

[19] United States v. Edwards, 577 F.2d 883, 895 (5th Cir.)(en banc), cert. denied, 439 U.S. 968, 99 S.Ct. 458, 58 L.Ed.2d 427 (1978); Agostino, 608 F.2d at 1037.

[20] The Government argues that the sum total of the following information available to the state troopers at the time they decided to continue the search at headquarters was "rather substantial" and amounts to probable cause, to wit: (1) Chay was driving without a valid license and without any other identification; (2) Kye Soo Lee, who had identification, was unable to communicate with the troopers; (3) the Ryder truck had Florida license plates, yet Chay and Kye Soo Lee stated they were travelling from New York to Dallas, Texas; (4) the truck rental agreement was in the name of a third party, Min Sik Lee, with a California address; (5) Chay had a "beeper" on his person at all pertinent times; (6) Chay lied when he initially told Vanderhoven that Kye Soo Lee was the lessee of the truck; (7) Chay and Kye Soo Lee were travelling with an unusually large amount of cash; (8) Chay and Kye Soo Lee lied about their knowledge of the contents of the truck and their ability to gain access to it; (9) the contents of the truck was expensive "designer" merchandise but was packaged in a manner inconsistent with its character; (10) though this was apparently commercial cargo, neither Chay nor Kye Soo Lee could show any registration, permit, bill of

13

The initial stop of the truck was a valid traffic stop which did not violate the defendants' constitutional rights, as the prior panel held.[21] Because Chay was driving without a driver's license and had no other identification to support his contention that he was the same Min Ho Chay who was licensed to drive in Texas, undeniably Louisiana law enforcement authorities had a right to arrest him.[22] See, L.S.A.- R.S. 32:52 and 402.

Louisiana law authorizes warrantless misdemeanor arrests if an officer has probable cause to believe that the suspect has committed a crime in his presence. There is no question but that Officer Vanderhoven had probable cause to believe that Chay violated a criminal statute, in this case L.S.A.-R.S. 32:52 which requires the driver of a motor vehicle to be licensed.[23]

---

lading, consignment or other documents tending to demonstrate their lawful connection either with the cargo or the truck; and (11) at the roadside when the cargo doors were opened SA Baldwin stated his belief that the merchandise was "probably counterfeit." The Court agrees with the Government, that considering these factors, Chay and Kye Soo Lee's conduct can hardly be characterized as "innocuous" as appellees suggest or as consistent with the operation of a legitimate commercial enterprise. Rather, their conduct was to the opposite effect - that is, consistent with that of individuals involved in illegal activity, specifically transporting stolen goods and/or contraband.

[21] Kye Soo Lee, 898 F.2d at 1039.

[22] Vanderhoven testified that his normal procedure for an offense such as Chay's was to transport the individual to the Bossier Parish Jail for fingerprinting and either posting a bond or paying a citation. Transcript, at p. 106 (Record, Vol. 4).

[23] See, La.C.Cr.P. Art. 933(4); L.S.A.-R.S. 14:2; State v. Pickering, 432 So.2d 1067, 1070 (La.App. 3rd Cir.), cert. denied, 438 So.2d 574 (La.1988)(a violation of L.S.A.-R.S. 32:52 is considered a criminal act).

14

The Court disagrees with appellee's contention that L.S.A.-R.S. 32:391 requires the issuance of a summons in lieu of arrest. Summons is only required after arrest if the conditions of R.S. 32:391(A) can be met and only in the case that the individual complies with R.S. 32:411[24] is he given the option of release pending bail.[25] Given the circumstances that Chay did not have a driver's license in his possession to give to the arresting officer in lieu of bail, the mandate of R.S. 32:391 (i.e., the issuance of a summons in lieu of arrest) is not applicable.

Upon stopping Chay and Kye Soo Lee on I-20, Vanderhoven was confronted with information that these two individuals were transporting some cargo through the state, in a truck rented to a third person, and neither could explain why they had the truck, what the cargo was, and why they had no access to the cargo, all of which was wholly inconsistent with the operation of a legitimate business.[26] Moreover as previously mentioned, they had lied to

[24] L.S.A.-R.S. 32:411 requires deposit of license in lieu of security upon arrest.

[25] See, State v. Gardner, 476 So.2d 938, 941-42 (La.App. 2nd Cir.), cert. denied, 478 So.2d 1233 (La. 1985) stating that R.S. 32:391 provides for the mandatory issuance of a summons in lieu of full custody arrest if certain provisos are met. The Gardner court further notes that R.S. 32:391(C) provides specific authorization for the arresting officer's traditional discretion to institute full custody arrest.

[26] We make special mention here of Louisiana law regulating motor carriers - that is, L.S.A.-R.S. 45:161 et seq. Section 163.1A(1)(a) explains that motor carriers include common carriers, contract carriers and private carriers. It further sets out registration/permit requirements for all motor carriers entering, leaving or crossing the state of Louisiana. Section 163C(1) states that any of the Louisiana Public Service Commission's duly appointed officers have the authority to make

Vanderhoven about certain significant facts: (1) Chay lied when he originally told Vanderhoven that his passenger Kye Soo Lee rented the truck (i.e., the rental agreement indicated a third person Min Sik Lee was the lessee of the vehicle); (2) Chay lied about his knowledge of the contents of the truck, which became apparent to the officers when they accessed the cargo and found "Gucci" baseball caps just like the one he was wearing; and (3) both Chay and Kye Soo Lee lied when they claimed that they could not open the cargo section of the truck, when the key to the cargo section was on the key ring along with the truck's ignition key.

The "laminated total" of these factors when considered together with the haphazard manner in which the "designer" merchandise was packaged, the lack of any written evidence of consignment or a bill of lading and no explanation whatsoever for the secrecy maintained by the two with regard to the contents of the truck amounted to probable cause to arrest Chay and Kye Soo Lee. This is so, particularly in light of the fact that upon viewing the cargo at the roadside, SA Baldwin had the distinct impression that the cargo was probably counterfeit, i.e.

---

arrests for violations of any of the provisions of R.S. 45:161 through 45:178, and Section 163C(4) extends that authority with respect to anyone who procures, aids, or abets any motor carrier in his failure to observe and or comply with the aforementioned provisions. There is no question but that the state may regulate commercial trucking, and **logically the reasonable expectation of privacy guaranteed by the Fourth Amendment is implicated to a lesser degree when dealing with searches of commercial cargo** than with searches on one's person for personal possessions. Cf. United States v. Hernandez, 901 F.2d 1217, 1221 n.4 (5th Cir. 1990).

contraband, and said so at the time.  That Vanderhoven continued to suspect drugs is irrelevant.[27]

Whereas here, Chay and Kye Soo Lee produced no documentation whatsoever, nothing indicated either of them owned/leased the truck or that they were employed by the truck's lessee Min Sik Lee, there was probable cause to arrest as it appeared to the officers that they were unlawfully in possession of a truck and/or merchandise which from all appearances was counterfeit.

In Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), the Supreme Court refined the exigency requirement and held that the existence of exigent circumstances was to be determined at the time the automobile is seized.  In Chambers, the car search at issue took place at the police station, where the vehicle was immobilized sometime after the driver had been arrested.  Given probable cause and exigent circumstances at the time the vehicle was first stopped, the Chambers court held that the later warrantless search at the station passed constitutional

_____

[27]  This is so because we analyze what the law objectively authorized Vanderhoven to do based on the facts known to him at the pertinent time and not on the basis of his subjective intent. United States v. Hernandez, 901 F.2d 1217, 1219 (5th Cir. 1990)(quoting United States v. Causey, 834 F.2d 1179, 1184 (5th Cir. 1987)(en banc) for the proposition that "so long police do no more than they are objectively authorized and legally permitted to do, their motives in doing so are irrelevant and hence not the subject of inquiry."); see also, United States v. Basey, 816 F.2d 980, 990 (5th Cir.), reh'g denied, 820 F.2d 1223 (5th Cir. 1987)(en banc).  In other words, it is irrelevant that Vanderhoven strongly suspected that the contraband was drugs somewhere hidden in the cargo, because he was unquestionably aware of the fact that the cargo itself was "probably counterfeit."

17

muster.[28]

In Michigan v. Thomas, 458 U.S. 259, 102 S.Ct. 3079, 3080, 73 L.Ed.2d 750 (1982)(per curiam), the Supreme Court reaffirmed its earlier holding in Chambers, inter alia, stating:

> We firmly reiterate this holding in Texas v. White, 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975). See also, United States v. Ross, 456 U.S. 798, 807, n.9, 102 S.Ct. 2157, 2163, n.9, 72 L.Ed.2d 572 (1982). It is thus clear that the justification to conduct such a warrantless search does not vanish once the car has been immobilized; nor does it depend upon a reviewing court's assessment of the likelihood in each particular case that the car would have been driven away, or that its contents would have been tampered with, during the period required for the police to obtain a warrant.

Id. at 3080-81. The Supreme Court in Michigan made mention of the facts in Chambers and Texas, supra, that the searches at issue in those cases were conducted at the station house. Id. at n.2.

In the case at bar, that the officers neither "arrested" nor insisted that Chay and Kye Soo Lee be detained along with the truck does not negate the existence of probable cause to arrest the

---

[28] See also, California v. Acevedo, 111 S.Ct. 1982, 1986, 114 L.Ed.2d 619 (1991) explaining Chambers as follows:
> The validity of the later search derived from the ruling of Carroll that an immediate search without a warrant at the moment of seizure would have been permissible. See, Chambers, 399 U.S., at 51, 90 S.Ct., at 1981. The Court reasoned in Chambers that the police could search later whenever they could have searched earlier, had they so chosen. Id. at 51-52, 90 S.Ct., 1981. Following Chambers, if the police have probable cause to justify a warrantless seizure of an automobile on a public roadway, they may conduct either an immediate or a delayed search of the vehicle.

18

defendants at the time of the initial roadside search of the truck.[29] At that point the focus was contraband believed to be either the cargo itself or secreted within the cargo of the truck and not interrogation or physical investigation of the defendants. Moreover, the officers were given no reason to exert any of the types of restraints commonly associated with "custodial arrest" because Chay and Kye Soo Lee opted to accompany the truck to headquarters without exhibiting any qualms about doing so.

The first case cited by appellees, Hayes v. Florida, 470 U.S. 811, 105 S.Ct. 1643, 84 L.Ed.2d 705 (1985) serves as no bar to this Court's ruling in the instant case. The holding of Hayes proscribes forcibly removing a person from a place where he is entitled to be and transporting him to the police station where he is detained, without probable cause to arrest or a warrant. Id. at 1647-48. Our holding that probable cause to arrest Chay and Kye Soo Lee existed at the time of the roadside search obviates the applicability of the Hayes case.

Another case cited by appellees, United States v. Place, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), did not involve an automobile at all. In Place, the court considered the temporary detention of luggage in an airport. Not only was no automobile

---

[29] See, United States v. Galberth, 846 F.2d 983, 993 n.18 (5th Cir. 1988)(citing, Hoffa v. United States, 385 U.S. 293, 310, 87 S.Ct. 408, 417, 17 L.Ed.2d 374 (1966) for the proposition that police officers are not required to effectuate an arrest at the moment probable cause arises because "officers are under no constitutional duty to call a halt to a criminal investigation the moment that they have minimum evidence to establish probable cause, a quantum of evidence which may fall short of the amount necessary to support a criminal conviction").

involved, but the defendant, Place, was waiting at the airport to board his plane, not preparing to leave the airport in a car. The search in Place involved personal luggage, whereas here the search focussed on a Ryder rental truck with commercial cargo which appeared to be counterfeit and thus, in the country illegally.[30] Finally, in Place the narcotics agents detained the luggage for the very purpose of obtaining probable cause. In the case at bar, the officers had ample indicia of criminal enterprise establishing probable cause to arrest Chay and Kye Soo Lee and to search their truck for contraband.

## CONCLUSION

The prior panel determined that initial detention of Chay and Kye Soo Lee was justified under Terry v. Ohio and their consent to search at the roadside was valid. We hold that probable cause to arrest the pair existed at the time the roadside search revealed "probably counterfeit" merchandise. Accordingly, there being both probable cause to arrest and probable cause to believe that the vehicle contained contraband extant at the time of the roadside search, the later search of the truck at the state troopers' headquarters passes constitutional muster. The order of the district court suppressing the evidence is reversed and the case is remanded for further proceedings.

REVERSED AND REMANDED.

---

[30]   See, California v. Acevedo, 111 S.Ct. at 1990 (stating, "from Carroll through Ross, this Court has explained that automobile searches differ from other searches").