

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-11-2007

# O'Connor v. Philadelphia

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-3029

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"O'Connor v. Philadelphia" (2007). *2007 Decisions*. Paper 1113.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1113

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-3029
_____

MARVIN O'CONNOR,
                                        Appellant
v.

CITY OF PHILADELPHIA; PHILADELPHIA
POLICE OFFICER IEZZI, BADGE #5138; PHILADELPHIA
POLICE OFFICER COLEMAN, BADGE #7510,
INDIVIDUALLY AND AS POLICE OFFICERS FOR THE
CITY OF PHILADELPHIA

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Civil Action No. 05-cv-02879
(Honorable Lawrence F. Stengel)
_____

Submitted Under Third Circuit LAR 34.1(a)
April 27, 2007

Before: SCIRICA, *Chief Judge,* FUENTES, and ALARCÓN,[*] *Circuit Judges.*

(Filed:   May 11, 2007)
_____
OPINION OF THE COURT
_____

_____

[*]The Honorable Arthur L. Alarcón, Senior Judge of the United States Court of
Appeals for the Ninth Circuit, sitting by designation.

1

ALARCÓN, *Circuit Judge*.

Marvin O'Connor has appealed from the District Court's order granting summary judgment in favor of the City of Philadelphia, Police Officer Graziano Iezzi and Police Officer Anthony Coleman. Mr. O'Connor contends that the District Court erred in concluding that the police officers had probable cause to arrest him. We will affirm the District Court's order because no reasonable jury could find from the collective facts known to the officers that they lacked probable cause to arrest Mr. O'Connor.

I

A

The evidence presented by the parties, viewed in the light most favorable to Mr. O'Connor, reveals the following facts: Officer Iezzi had been a City of Philadelphia police office for fourteen years. During his police service, he had been assigned to a narcotics unit for twelve years. On June 19, 2003, the date Mr. O'Connor was arrested, Officer Iezzi was assigned to the Narcotics Field Unit.

In late May or early June of 2003, Officer Iezzi began a narcotics investigation of Stephen Williams. As part of this investigation, Officer Iezzi and his supervisor interviewed a confidential informant for approximately one hour at a street location. Officer Iezzi had not previously received information from that informer. The informer identified Stephen Williams, through his street name, as an African American man who was a narcotics dealer employed by a third person. He stated that Mr. Williams drove a black Acura. The informer did not disclose the name of Mr. Williams's employer.

2

On June 19, 2003, Officer Iezzi conducted a surveillance of Mr. Williams's activities. Assigned to assist Officer Iezzi were Officer Coleman, Officer McKnight, Officer Galazka, Sergeant Torpey, Corporal Peluzzo, and Officer Kidd. The purpose of this investigation was to discern the identity of Mr. Williams's employer.

At approximately 5:00 pm on that date, Officer Coleman and Officer McKnight observed Mr. Williams walk to a green Oldsmobile four-door sedan, Pennsylvania license number FCF5834, that was parked on the south side of 2000 Mercy Street. Officer Coleman and Officer McKnight saw Mr. Williams open the front passenger door and retrieve "an unknown item," which he secured in his right waist pocket. Mr. Williams then walked to a black Acura Legend, Pennsylvania license plate number E260766, and drove away. A Pennsylvania Bureau of Motor Vehicles check revealed that the license plate on the Acura Legend belonged to a 1987 Cadillac.

Mr. O'Connor testified during his deposition that he drove his green 1994 Oldsmobile, Pennsylvania license plate number FCF5834, to 20th and Mercy Street on June 19, 2003, "to holler at a few fellas." There he saw Mr. Williams. Mr. Williams came to Mr. O'Connor's car when he pulled up. In response to a question "whether or not Mr. Williams had occasion to go inside your car while you weren't in it now and take something out," Mr. O'Connor replied: "To my knowledge, no."

The surveillance officers observed Mr. Williams drive from 20th and Mercy Street to 1100 Reed Street. There, Mr. Williams was observed engaging in what appeared to be a narcotics transaction with a white male. That individual was not apprehended.

3

Mr. Williams then drove to the area of 20th and Wolf Street. Officers Kidd and Galaska followed Mr. Williams to 2400 10th Street. There, Mr. Williams stopped his car. A white male approached the Acura and handed Mr. Williams United States currency in exchange for a small blue packet. The white male then handed a blue packet to Jacqueline Amico. Mr. Williams drove away. The officers were unable to apprehend the white male. Sergeant Torpey arrested Ms. Amico after she dropped the blue packet. It contained a white powder that appeared to be cocaine.

Based on the foregoing observations by the surveillance team, Mr. Williams's Acura was followed to 2000 Oakford Street. There, Officer Coleman observed Mr. O'Connor's green Oldsmobile parked on the south east corner of 21st and Oakford Street. Mr. O'Connor walked to the Acura and attempted to open the passenger side door. At that time, Officer Iezzi and Officer Coleman arrested Mr. O'Connor.

Officer Kidd retrieved a clear plastic bag containing twenty-two blue zip-lock packets from Mr. Williams's vehicle. Each contained a powder that appeared to be cocaine. The officers also found a clear glass jar containing a green weed and seeds that appeared to be marijuana. The officers also located two zip-lock packets that also contained a substance that appeared to contain marijuana. The Officer's seized $245 in United States currency from Mr. Williams's person. They also recovered a loaded Ruger 9mm semi-automatic pistol from the top of the rear seat. An inventory search of the trunk of the Acura revealed a plastic bag that contained a green weed that appeared to be marijuana. The Officers also found an Enterprise Rent-A-Car statement in the name of

4

Stephen B. Williams and Marvin O'Connor. Officer Iezzi conducted a field test of the contents of two packets and one jar. The test results were positive for the presence of marijuana.

Mr. O'Connor was released on bail after being incarcerated for thirty-six hours. The District Attorney's office charged Mr. Williams and Mr. O'Connor with conspiracy to commit controlled substance offenses, in violation of the Uniform Firearms Act, and possession of an instrument of a crime in violation of state law. At Mr. O'Connor's preliminary hearing, Officer Iezzi was requested by the District Attorney's Office to recommend that the charges against Mr. O'Connor be withdrawn. The charges against Mr. O'Connor were not prosecuted.

B

Mr. O'Connor filed this 42 U.S.C. § 1983 action in the United States District Court for the Eastern District of Pennsylvania on June 17, 2005, against the City of Philadelphia, Officer Iezzi, and Officer Coleman. He alleged that the officers, as state actors, had violated "his rights under the laws and Constitution of the United States in particular the Fourth and Fourteenth Amendments." Specifically, Mr. Williams asserted in his complaint that the officers' conduct subjected him to false arrest and false imprisonment.

The City of Philadelphia and the individual defendants filed a motion for summary judgment. After considering Mr. O'Connor's opposition, and the evidence presented by the parties, the District Court granted defendants' motion for summary judgment and

dismissed the action.  Mr. O'Connor has filed a timely appeal.  His appeal is limited to the District Court's orders granting summary judgment to Officer Iezzi and Officer Coleman.  The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331.  We have jurisdiction under 28 U.S.C. § 1291.

## II

Mr. O'Connor contends that the District Court erred in concluding that the police officers had probable cause to arrest and prosecute him.  The standard of review of a District Court's order granting a motion for summary judgment is plenary.  *Simpson v. Kay Jewelers, Division of Sterling, Inc*., 142 F.3d 639, 643 (3d Cir. 1998).  Under Rule 56 of the Federal Rules of Civil Procedure, we must review the evidence in the light most favorable to Mr. O'Connor, as the non-moving party; and draw all reasonable inferences in his favor.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986).

An arrest made without probable cause creates a cause of action for false arrest under 42 U.S.C. § 1983.  *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988).  In addition, "where the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest."  *Groman v. Township of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995) (citing *Thomas v. Kippermann*, 846 F.2d 1009, 1011 (5th Cir. 1988)).

The Supreme Court has defined probable cause as "facts and circumstances 'sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing an offense.'" *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975) (quoting *Beck v.*

6

*Ohio*, 379 U.S. 89, 91 (1964)).  While "[p]robable cause to arrest requires more than mere suspicion; . . . it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt."  *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482-83 (3d Cir. 1995).  This Court has held that we must apply a "common sense approach," based on the totality of the circumstances, to determine whether there was probable cause to arrest.  *Paff v. Kaltenbach*, 204 F.3d 425, 436 (3d Cir. 2000).  In determining whether an officer had probable cause for an arrest, a court, in reviewing the totality of the circumstances, must "examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause."  *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)).

"[A]n informant's 'veracity,' 'reliability' and 'basis of knowledge' are all highly relevant in determining the value of his report."  *Illinois v. Gates*, 462 U.S. 213, 230 (1983).  An informant who relates his or her information to a law enforcement officer during an in-person meeting is more reliable than an anonymous caller.  *United States v. Valentine*, 232 F.3d 350, 354 (3d Cir. 2000).  The corroboration of an informant's tip by independent police work enhances the value of an informer's tip.  *Gates*, 462 U.S. at 241-42.  "[I]n making a warrantless arrest an officer may rely upon information received through an informant, rather than upon his direct observations, so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge."  *Id.* at 242 (internal quotation marks omitted).

7

In order to determine whether the collective knowledge of police officers is sufficient to establish probable cause, there must be evidence that the police officers were either (1) cooperating in an investigation; or (2) there was communication between the officers. The Supreme Court has clearly established that "where law enforcement officers are cooperating in an investigation, as here, the knowledge of one is presumed shared by all." *Illinois v. Andreas*, 463 U.S. 765, 772 n.5 (1983). The Eighth Circuit has held that "the validity of a search may be based on the collective knowledge of all of the law enforcement officers involved in an investigation if . . . some degree of communication exists between them." *U.S. v. Gillette*, 245 F.3d 1032, 1034 (8th Cir. 2001) (internal quotation marks omitted). There is a distinction between "officers functioning as a 'search team' . . . and officers acting as independent actors who merely happen to be investigating the same subject." *Id.* (internal citations omitted). The First Circuit held that "[t]he 'collective knowledge' or 'pooled knowledge' principle has been used to validate arrests in two ways: (1) by tracing the arresting officer's action back to an *individual* in a law enforcement agency who possessed information sufficient to establish probable cause, and (2) by finding that the directing *agency* as a whole possessed the necessary facts." *U.S. v. Meade*, 110 F.3d 190, 194 (1st Cir. 1997).

The Ninth Circuit has held that "[w]hen there has been communication among agents, probable cause can rest upon the investigating agents' collective knowledge." *U.S. v. Del Vizo*, 918 F.2d 821, 826 (9th Cir. 1990) (internal quotation marks omitted). In *U.S. v. Kye Soo Lee*, 962 F.2d 430 (5th Cir. 1992), the Fifth Circuit held that "[i]t is not

8

necessary that the arresting officer himself have personal knowledge of all of the facts . . . . probable cause can rest upon the collective knowledge of the police, rather than solely on that of the officer who actually makes the arrest, when there is some degree of communication between the two." *Id.* at 435 (internal quotation marks omitted).

The record in this case shows that Officer Iezzi interviewed the confidential informant in person for approximately one hour. This face-to-face interrogation afforded Officer Iezzi an opportunity to assess the informant's credibility and reliability. More importantly, the informer's tip that Mr. Williams was a drug dealer who drove a black Acura, and was employed by a third person, was corroborated by the independent observations of the members of the surveillance team who saw Mr. Williams making a sale of cocaine from the black Acura shortly after appearing to remove something from Mr. O'Connor's Oldsmobile. The arresting officers could reasonably infer from this conduct that the owner of the Oldsmobile supplied Mr. Williams with narcotics for street sales.

We are mindful that "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979). "[A] search or seizure of a person must be supported by probable cause particularized with respect to that person. This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another . . ." *Id.* Mr. O'Connor's meetings with Mr. Williams on June 19, 2003, at different locations, before

9

and after a street sale of narcotics, support an inference that his conduct was more than mere association or coincidental presence at a crime scene.

The record shows that Officer Iezzi had been involved in narcotics enforcement police work for twelve years. "In reviewing on-the-scene judgments of police officers we must, of course, remember that police officers may well 'draw inferences and make deductions . . . that might well elude an untrained person.'" *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002) (citing *United States v. Cortez*, 449 U.S. 411, 418 (1981)). Officer Iezzi testified during his deposition that, based on his experience, he inferred that some of the narcotics found in Mr. Williams's Acura were originally in Mr. O'Connor's vehicle. This belief, based on Officer Iezzi's experience, weighs in favor of finding that probable cause existed to make the arrest of Mr. O'Connor.

"A court ruling on a qualified immunity issue must make a threshold inquiry as to whether '[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?'" *Thomas v. Independence Township*, 463 F.3d 285, 294 (3d Cir. 2006) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

> If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.

*Saucier*, 533 U.S. at 201.

10

Conclusion

Although it is likely that no single fact described above could alone support a finding of probable cause, we are persuaded that the totality of the circumstances would persuade a reasonable juror that the officers had probable cause to arrest Mr. O'Connor.[1] Because the evidence shows that the police officers had probable cause to arrest and imprison Mr. O'Connor, he has failed to demonstrate that he was subjected to malicious prosecution under 42 U.S.C. § 1983. *See Wright v. City of Philadelphia*, 409 F.3d 595, 604 (3d Cir. 2005) ("To prevail on [a malicious prosecution] claim [under § 1983], [the plaintiff] must show that the officers lacked probable cause to arrest [him].").

We conclude that Mr. O'Connor has failed to demonstrate that a constitutional right was violated. Therefore, we need not consider whether the constitutional right asserted by Mr. O'Connor was clearly established. Accordingly, we will affirm the District Court's order granting summary judgment in favor of the appellees in this matter.

---

[1]Mr. O'Connor also appears to argue that the fact that Officer Iezzi was instructed by the prosecutor to request that the charges be dropped indicates that there was not sufficient probable cause for his arrest. However, probable cause for an arrest does not require law enforcement officers to have sufficient evidence "to prove guilt beyond a reasonable doubt." *Orsatti*, 71 F.3d at 482-83.