**UNITED STATES of America, Plaintiff–Appellant,**

v.

**KYE SOO LEE, Min Ho Chay, and Min Sik Lee, Defendants–Appellees.**

No. 89–4164.

United States Court of Appeals, Fifth Circuit.

April 24, 1990.

William J. Flanagan, Asst. U.S. Atty., Joseph S. Cage, Jr., U.S. Atty., Shreveport, La., for plaintiff-appellant.

Gary A. Udashen, Milner, Goranson, Udashen & Wells, Dallas, Tex., E. Daniel Burt, Jr., Burt & LaVigne, Shreveport, La., for Kye Soo Lee.

Alfred R. Beresko, Shreveport, La., for Min Ho Chay.

Gerald M. Cobb, Beverly Hills, Cal., Wayne J. Blanchard, Shreveport, La., for Min Sik Lee.

Before WISDOM, JOHNSON and HIGGINBOTHAM, Circuit Judges.

JOHNSON, Circuit Judge:

The Government appeals the district court's grant of the defendants' motion to suppress. We reverse and remand.

## I. FACTS AND PROCEDURAL HISTORY

On May 27, 1988, Louisiana State Trooper Bruce Vanderhoven (Vanderhoven), while patrolling Interstate 20 near Bossier City, Louisiana, observed a Ryder rental truck bearing Florida license plates speeding and weaving from lane to lane. Vanderhoven executed a traffic stop. At the wheel of the truck was Min Ho Chay (Chay) and in the passenger's seat was Kye Soo Lee.[1] When asked for identification by Vanderhoven, Chay, who was wearing a paging device, was unable to produce a driver's license but claimed that he held a valid Texas driver's license—an assertion that Vanderhoven was able to confirm by radio. Before questioning Kye Soo Lee, Vanderhoven frisked Chay, found nothing,

---

1. Because there are two defendants in this case named "Lee", their full names will be used throughout this opinion in the interest of clarity.

and asked Chay to have a seat in the patrol vehicle. Before doing so, Chay told Vanderhoven that Kye Soo Lee was the renter of the Ryder truck.

Approaching Kye Soo Lee, Vanderhoven asked for identification. After Kye Soo Lee indicated that he could not speak English, Vanderhoven brought Chay forward and asked Chay to serve as translator.[2] Thereafter, Kye Soo Lee produced a valid Texas driver's license and a social security card. Vanderhoven, while frisking Kye Soo Lee, felt a large bulge in Kye Soo Lee's pant's pocket which, according to Vanderhoven, felt like a roll of currency. Preferring to wait for a supervising officer or a backup to be present before confiscating any cash from Kye Soo Lee, Vanderhoven radioed for assistance. Vanderhoven then placed Kye Soo Lee in the patrol vehicle with Chay.

Before the backup unit arrived, Vanderhoven asked Chay for the rental agreement covering the Ryder truck. After Chay advised Vanderhoven of its location, Vanderhoven retrieved the agreement from the dashboard of the truck. Upon inspection of the agreement, Vanderhoven discovered that the renter of the truck was not Kye Soo Lee, but an unknown third party named Min Sik Lee.

Responding to Vanderhoven's radio request for a supervisory backup was Louisiana State Trooper Archie Griffin (Griffin), who arrived at the scene some ten minutes[3] after the truck had been initially pulled over. In Griffin's presence, Vanderhoven again frisked Kye Soo Lee, noting that the bulge in Kye Soo Lee's pants pocket was considerably smaller than when Vanderhoven first frisked him. As Vanderhoven had guessed, the bulge in Kye Soo Lee's pocket proved to be a roll of United States' currency. Suspecting that Kye Soo Lee, while in the squad car with Chay, had split the original roll of bills and given some to Chay, Vanderhoven again frisked Chay. This time, the search of

Chay yielded a substantial quantity of cash, whereas before, Vanderhoven had felt nothing in Chay's pockets. The total amount of currency seized from the pair was $8,900.26.

Thereafter, Vanderhoven asked Chay for permission to search the cargo hold of the truck. Vanderhoven gave Chay a written "consent to search" form for Chay's signature. Chay read the form and discussed it with Kye Soo Lee. Although neither Chay nor Kye Soo Lee signed the form, Chay reportedly told Vanderhoven that it was "okay" with them to search the truck. In the same conversation, Chay disavowed any knowledge of what he and Kye Soo Lee were carrying in the truck's cargo hold. Chay also claimed that there was no key to open the padlock on the cargo hold door. Vanderhoven, however, had previously noticed a new "Master" brand key on the key ring which hung from the truck's ignition switch. Coincidentally, the padlock which secured the truck's cargo hold was a new "Master" brand padlock. After opening the padlock with the key, the officers saw several boxes in the cargo hold, some of which had spilled over during transit to reveal Gucci baseball caps and Louis Vuitton handbags.

Meanwhile, Louisiana State Trooper Don Campbell (Campbell), accompanied by DEA agent Terry Baldwin (Baldwin), were driving by the scene and stopped to lend their assistance. Seeing the above described merchandise in the truck, Baldwin commented that it looked counterfeit. Concluding that a more thorough search of the cargo hold would be hazardous while the truck was parked on the shoulder of an interstate highway, and suspecting that the truck might contain other contraband, the officers decided it would be best to take the truck to the nearby state police headquarters. When approached with the proposed plan, Chay and Kye Soo Lee reportedly agreed to accompany the officers to headquarters. Chay and Kye Soo Lee's

---

**2.** Both Chay and Kye Soo Lee are Korean.

**3.** There is some degree of confusion about the precise time interval. The record, however, supports a conclusion that the elapsed time

from when Vanderhoven first pulled Chay and Kye Soo Lee over until when Officer Griffin arrived is from between five to ten minutes.

alleged agreement to do so came notwithstanding Vanderhoven's reported assurances to the pair that they were not under arrest and were free to leave at any time.

The more extensive search of the truck at state police headquarters yielded additional "designer" goods which officers suspected were bogus. United States Customs Agents, who had been summoned by the Louisiana State Police, arrived to inspect the merchandise. Special Agent Jacques Duck examined the goods and echoed Baldwin's earlier suspicions that they were counterfeit. Agent Duck's conclusions were subsequently confirmed by a United States Customs Fraud Team. Chay and Kye Soo Lee were thereafter arrested and transported to the Shreveport office of United States Customs.

While at the Customs' office, Chay, after being advised of his rights, gave a signed statement to agents. In his statement, Chay recited the following sequence of events. Chay alleged that he had been contacted in Dallas, Texas, by Kye Soo Lee. Chay stated that Kye Soo Lee had asked Chay to accompany him on a trip to New York City where, in return for money, the pair would pick up a vehicle and drive it back to Texas. Chay admittedly agreed to the plan. Upon their arrival in New York, Chay and Kye Soo Lee were met by Kye Soo Lee's friend, Min Sik Lee. Min Sik Lee had allegedly hired Kye Soo Lee to drive the Ryder truck to Dallas for $2,000.00. At the meeting in New York, Min Sik Lee told Chay and Kye Soo Lee where the truck was located, gave them the keys to the vehicle, and promised to meet them in Dallas the following Monday. In his statement, Chay maintained his earlier contention that he had been completely unaware of the truck's cargo. Chay alleged that "[t]o my knowledge, Min Sik Lee is the shipper and consignee of the merchandise found in the rental vehicle." [4]

On June 23, 1988, a federal grand jury returned an indictment charging Chay, Kye Soo Lee and Min Sik Lee with conspiracy to traffic in counterfeit goods in violation of 18 U.S.C. § 371 and trafficking in counterfeit goods in violation of 18 U.S.C. § 2320. All three defendants entered pleas of not guilty to the charges in the indictment. Before trial, all three defendants moved the district court to suppress the evidence seized during the search of the truck. On the magistrate's recommendation and over the Government's objections, the district court granted the motions to suppress after concluding that the defendants had standing to challenge the search. Thereafter, the Government timely filed the instant appeal.

## II. DISCUSSION

### A.

■ As a threshold matter, the Government renews its argument that all three defendants in this case lacked standing to contest the validity of the search. The Government contends that neither Chay nor Kye Soo Lee had a legitimate expectation of privacy in the contents of a locked truck that they were driving to Texas from New York at the behest of a third party. With respect to Min Sik Lee, the Government contends that any legitimate expectation of privacy that Min Sik Lee may have had in the truck was extinguished when he relinquished control of the vehicle to Chay and Kye Soo Lee. Since whether a defendant has standing to question an allegedly illegal search and seizure is a question of law, we address this issue *de novo*. *See United States v. Lanford*, 838 F.2d 1351, 1353 (5th Cir.1988).

In *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), the Supreme Court underscored a two-pronged test to determine whether a defendant has standing to contest the validity of a search under the fourth amendment. Such a determination depends on 1) whether the defendant is able to establish an actual, subjective expectation of privacy with respect to the place being searched or items being seized, and 2) whether that expectation of

---

4. Kye Soo Lee was not questioned because of the language barrier. Speaking through Chay, Kye Soo Lee did, however, agree with the contents of Chay's statement except for the assertion that Min Sik Lee was the consignee of the shipment.

**1038**

privacy is one which society would recognize as reasonable. *Id.* at 151, 99 S.Ct. at 434 (citing *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). Thus, the question of whether a defendant can claim the protection of the fourth amendment hinges "not upon a property right in the invaded place but upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." *Rakas*, 439 U.S. at 143, 99 S.Ct. at 430 (citations omitted).

The Government argues that Kye Soo Lee and Chay did not have standing to contest the search of the truck's cargo hold because they did not rent the truck, did not own the hats and handbags, and claimed not to know that they could unlock the back door of the truck. Thus, according to the Government, Kye Soo Lee and Chay did not have a legitimate subjective expectation of privacy in the truck's cargo hold. We disagree. In *United States v. Martinez*, 808 F.2d 1050 (5th Cir.1987), a case which presented issues similar to those presented by the instant case, this Court held that where a person has borrowed an automobile from another, with the other's consent, the borrower becomes a lawful possessor of the vehicle and thus has standing to challenge its search. *Id.* at 1056. In the instant case, Chay and Kye Soo Lee were operating the truck with Min Sik Lee's permission. Indeed, Min Sik Lee gave Chay and Kye Soo Lee the keys to the truck and entrusted the vehicle and its contents to Chay and Kye Soo Lee. On such facts as these, we are not prepared to disturb the district court's finding that Chay and Kye Soo Lee had standing to contest the search of the truck's cargo hold.

The Government also contends that Min Sik Lee lacked standing to contest the search because he had no reasonable expectation of privacy in the truck's cargo hold.[5] In *United States v. Haydel*, 649 F.2d 1152 (5th Cir.1981), *cert. denied*, 455 U.S. 1022, 102 S.Ct. 1721, 72 L.Ed.2d 140 (1982), this Court, interpreting *Rakas, supra*, stated that "[n]o one circumstance is talismanic to the *Rakas* inquiry." *Id.* at 1154. We held that while property rights are clearly a factor to be considered, they are neither the beginning nor the end of the inquiry. Other factors to be considered in making a determination of whether a defendant has an expectation of privacy "whether the defendant has a possessory interest in the thing seized or the place searched, whether he has the right to exclude others from that place, whether he has exhibited a subjective expectation that it would remain free from governmental invasion, whether he took normal precautions to maintain his privacy and whether he was legitimately on the premises." *Id.* at 1155 (citations omitted). With the exception of the last factor, all of the *Haydel* factors militate in favor of a finding that Min Sik Lee had standing to contest the search of the truck's cargo hold. Min Sik Lee rented the truck. It was up to him what he would do with the truck. Moreover, Min Sik Lee placed a padlock on the truck's cargo hold door and gave the keys only to Chay and Kye Soo Lee. In short, Min Sik Lee had, in the truck's cargo hold, a right to exclude others and an expectation of privacy from governmental intrusion that he took normal precautions to maintain. Thus, on these facts, we conclude that Min Sik Lee, like Chay and Kye Soo Lee, had standing to contest the search of the truck's cargo hold.[6]

5. The Government does not argue that Min Sik Lee failed to demonstrate an actual or subjective expectation of privacy. Instead, its argument is confined to the second prong of *Rakas* which is the objective or reasonable expectation standard.

6. To the extent that the Government relies on this Court's holding in *United States v. Novello*, 519 F.2d 1078 (5th Cir.1975), *cert. denied*, 423 U.S. 1060, 96 S.Ct. 797, 46 L.Ed.2d 651 (1976), in

support of its argument that Min Sik Lee did not have standing to contest the search, such reliance is misplaced. In *Novello*, the defendant stored a truck inside a warehouse. Only a small number of warehouse employees had access to the warehouse. One of the warehouse employees tipped off the DEA about suspicious activities taking place with regard to the stored truck. The DEA ultimately procured a warrant to search the truck after first gaining access to the warehouse fraudulently. This Court held that

## B.

Next, we determine whether the fourth amendment rights of Chay, Kye Soo Lee and Min Sik Lee were violated by the search and seizure in this case. The fourth amendment itself gives rise to the general rule that the Government violates a defendant's constitutional rights by executing a search and seizure without probable cause to do so. It is well settled that evidence obtained by the Government in violation of a defendant's fourth amendment rights may not be used to prove the defendant's guilt at trial. *Weeks v. United States*, 232 U.S. 383, 398, 34 S.Ct. 341, 346, 58 L.Ed. 652 (1914). This principle has become widely referred to in constitutional jurisprudence as the "exclusionary rule."

The Supreme Court, in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), carved out an exception to the general rule requiring the existence of probable cause. In *Terry*, the Supreme Court stated that where there is a reasonable and articulable suspicion that a person has committed or is about to commit a crime, limited searches and seizures are permissible under the fourth amendment even though probable cause does not exist. In lieu of the fourth amendment's probable cause standard, the Supreme Court in *Terry* promulgated what has become known as the "reasonable suspicion" standard. If the detaining officer is able to "point to

specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the search or seizure]", then the instruction is valid. *Id.*, 88 S.Ct. at 1880 (footnote omitted). The two part test announced by the Supreme Court in *Terry* to determine whether the less rigorous "reasonable suspicion" standard has been met, is as follows. First, the search and seizure must be justified by reasonable suspicion at the inception of the intrusion. Second, the search and seizure must be reasonably related in scope to the circumstances justifying the intrusion in the first instance. *Id.* at 1879.

In the instant case, the magistrate determined that the initial stop was a valid traffic stop which did not violate the defendants' constitutional rights. Additionally, the magistrate determined that the defendants consented to the search of the truck. Nevertheless, the magistrate recommended that the consent be invalidated. Underlying this recommendation was the magistrate's conclusion that the initially valid traffic stop had been transformed into an illegal detention because the officer's focus had been diverted from the traffic offenses and had been redirected to the truck and its contents. In other words, although Chay and Kye Soo Lee had first been properly detained for traffic infractions, their continued detention was improper because the

---

the defendant owner of the truck could not challenge the warrantless intrusion into the area of the warehouse which he had rented. Concluding that because the defendant knew that persons not associated with him had access to the warehouse area, he lacked a reasonable expectation of privacy in the area.

In the instant case, the Government advances the argument that Min Sik Lee took the same chance when he turned the truck over to Chay and Kye Soo Lee. *Novello*, however, can be easily distinguished from the instant case. In *Novello*, the defendant knew that the warehouse was accessible by persons that the defendant did not know. In contrast, in the instant case, Min Sik Lee intended for only two persons, Chay and Kye Soo Lee, to have access to the truck. Assuming for the sake of argument that Chay and Kye Soo Lee did not know that they held the padlock key which would open the truck's cargo door, it then appears evident that Min Sik Lee intended for no one other than himself to

have access to the truck's cargo hold—an even stronger indication that a reasonable expectation of privacy existed.

We also decline the defendants' invitation to apply the holding of the Supreme Court in *Steagald v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), to the facts of this case. In *Steagald*, the Supreme Court held that the Government may not raise a fourth amendment standing issue for the first time on appeal. In the instant case, however, the Government has not raised the standing issue for the first time on appeal. Rather, the Government first raised the issue in the district court through written objections to the magistrate's report. Although it would have been preferable to have first presented the standing argument to the magistrate, the Government nevertheless has preserved the issue for appellate purposes by presenting the issue to the district court for review.

detaining officer had no reasonable and articulable suspicion of criminal activity beyond the traffic offenses. Thus, in sum, the magistrate concluded that the consent to search given by Chay and Kye Soo Lee had become tainted by an illegal detention and was therefore invalid. *See, e.g., Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (consent invalid when given during an illegal investigatory detention).

On appeal, the Government challenges the magistrate's conclusions and contends that Vanderhoven was faced with specific and articulable facts that gave rise to a reasonable suspicion that criminal activity was taking place. Consequently, the Government urges that the detention of Chay and Kye Soo Lee was justifiable under *Terry.* In support of its contentions, the Government points to the fact that Vanderhoven was faced with a situation in which he had stopped two individuals driving a truck with out-of-state license plates who claimed to know nothing of the contents of the truck. Further, the Government notes that the driver of the truck did not have a valid driver's license in his possession and that the truck had been rented to an unknown third party. Finally, the Government emphasizes that Vanderhoven confiscated more than $8,000.00 in cash from Chay and Kye Soo Lee. According to the Government, the above circumstances justified a brief detention while Vanderhoven attempted to dispel his suspicion that the truck was either stolen, carrying contraband, or both. In the alternative, the Government argues that even if the facts recited above were not sufficient to warrant a brief investigatory detention, Chay and Kye Soo Lee gave their consent to search the truck's cargo hold while they were still being detained pursuant to a valid traffic stop.

We are persuaded that there was no illegal detention in this case. When Vanderhoven first pulled the Ryder truck over on the interstate highway, it was because the truck was weaving between lanes and speeding. Thus, the initial detention, as evaluated under *Terry,* was proper because Vanderhoven had reasonable and articulable facts which warranted the intrusion. Obviously, Chay was violating traffic laws. After Chay was initially detained, however, Vanderhoven was presented with a second set of circumstances. The second set of facts, in our opinion, justified the continued detention of Chay and Kye Soo Lee under *Terry.* This second set of facts included Chay's inability to produce a valid driver's license, Chay's lack of any identification whatsoever, the large quantity of cash Chay and Kye Soo Lee were carrying, the pager worn by Chay, the fact that the truck had been rented to an unknown third party, the fact that Chay had lied to Vanderhoven about who had rented the truck, the fact that Chay and Kye Soo Lee maintained their complete ignorance regarding the contents of the truck's cargo hold and finally, the pair's contention that they did not have a key to unlock the cargo hold's door when, in Vanderhoven's clear view, was a key which appeared to fit the door's lock. As the Government noted on brief, "with each additional fact learned or observed at the scene by Trooper Vanderhoven, the suspicious nature of the defendants' activity grew stronger." At the same time, the trooper reasonably and gradually escalated the nature of the intrusion in proportionate response to the level of the suspicious activity.

In our opinion, the above described circumstances constitute "specific and articulable facts which, taken together with rational inferences [drawn therefrom]" were sufficient under *Terry* to justify a reasonable suspicion on the part of Vanderhoven that criminal activity was afoot. Accordingly, Vanderhoven was justified in his continued detention of Chay and Kye Soo Lee. We are thus constrained to reverse the finding of the district court that Chay and Kye Soo Lee's otherwise valid consent to search was tainted by an illegal detention. The order of the district court suppressing the evidence is reversed and the case is remanded for further proceedings.

### C.

In so holding, we note that the district court, because it concluded that the defendants' constitutional rights under the fourth amendment were violated because of the improper search, made no findings with respect to the propriety of the transportation of Chay and Kye Soo Lee to state police headquarters. Since the Supreme Court has instructed that an officer must have either probable cause to arrest or the voluntary consent of a suspect before compelling the suspect to accompany the officer to police headquarters, it becomes, by virtue of our holding in this case, an essential inquiry. *See Hayes v. Florida,* 470 U.S. 811, 105 S.Ct. 1643, 84 L.Ed.2d 705 (1985). On remand, the district court should conduct factual inquiry as to whether Chay and Kye Soo Lee voluntarily consented to accompany the officers to the Louisiana State Police Headquarters or whether there was probable cause to arrest the pair.

### III. CONCLUSION

The detention of Chay and Kye Soo Lee was justified under *Terry v. Ohio.* Accordingly, Chay and Kye Soo Lee's consent to search the truck was valid. The order of the district court suppressing the evidence is reversed and the case is remanded for proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.