UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 96-4613

MICHAEL TROY DAVIS,
Defendant-Appellant.

Appeal from the United States District Court
for the Middle District of North Carolina, at Greensboro.
William L. Osteen, Sr., District Judge.
(CR-95-313)

Submitted: April 30, 1997

Decided: May 19, 1997

Before HAMILTON and WILLIAMS, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Walter L. Jones, CLIFFORD, CLENDENIN & O'HALE, L.L.P.,
Greensboro, North Carolina, for Appellant. Walter C. Holton, Jr.,
United States Attorney, Harry L. Hobgood, Assistant United States
Attorney, Greensboro, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Michael Troy Davis was arrested on Interstate 85 in North Carolina after a police officer stopped the rental car in which he was a passenger because the driver was speeding. A search of the car revealed cocaine base hidden in a wheel well. A jury subsequently convicted Davis on one count of possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1) (1994), and he was sentenced to 168 months in prison. Davis appeals his conviction, claiming that evidence and a statement he made after the car was stopped should be suppressed and that the district court erred by attributing to him for sentencing purposes cocaine base from an earlier transaction. We find no merit to his claims; consequently, we affirm.

I.

Davis first challenges the denial of his motion to suppress on the grounds that the officers arrested him at the scene of the traffic stop before they discovered the cocaine base and thus lacked probable cause to arrest him. This court reviews legal conclusions in a district court's suppression determination de novo and reviews the underlying factual findings under the clearly erroneous standard. See United States v. Rusher, 966 F.2d 868, 873 (4th Cir. 1992).

An ordinary traffic stop constitutes a limited seizure of the car's occupants, and this court analyzes the reasonableness of such a stop under principles established in Terry v. Ohio , 392 U.S. 1 (1968). See Berkemer v. McCarty, 468 U.S. 420, 439 (1984). This approach entails two considerations: whether the initial stop was legal and whether the subsequent investigation exceeded the proper scope of the traffic stop. See Rusher, 966 F.2d at 875-76. Because it is undisputed that the initial stop was valid, the only inquiry here is whether the subsequent investigation exceeded the proper scope of the traffic stop.

2

During an initial traffic stop, an officer "`may request a driver's license and vehicle registration, run a computer check, and issue a citation.'" Rusher, 966 F.2d at 876 (citation omitted). If the driver produces a valid license and proof that he is authorized to drive the car, the officer may no longer detain him. "Any further detention for questioning is beyond the scope of the Terry stop and therefore illegal unless the officer has a reasonable suspicion of a serious crime." Rusher, 966 F.2d at 876-77.

The officers in this case were justified in detaining Davis and the other occupants of the rental car while questioning them, obtaining the driver's consent to a search, and searching the vehicle. Trooper William Grey initially asked for the driver's license and the vehicle registration. He received a driver's license that did not appear to belong to the driver and, instead of a vehicle registration, a rental contract that did not authorize any of the car's occupants to drive the car. Moreover, the car was stopped in North Carolina, but the rental contract did not authorize taking the car outside of Maryland. These facts gave Grey an objectively reasonable suspicion that the car was stolen and justified his investigatory detention beyond the speeding ticket. The occupants' subsequent conflicting versions of their itinerary gave further justification to the officers' escalating suspicions and therefore justified the further detention of the three men. See United States v. Lee, 898 F.2d 1034, 1040 (5th Cir. 1990).

Contrary to Davis' contentions, the length of the detention did not convert the stop into an arrest. Though an investigatory stop should be brief, Terry imposes no rigid time limitation. The stop is permissible if "the police diligently pursue[ ] a means of investigation that [is] likely to confirm or dispel their suspicions quickly, during which time it is necessary to detain the defendant." See United States v. Sharpe, 470 U.S. 675, 685-86 (1985). Here, only nine minutes elapsed between the time Trooper Grey stopped the car for speeding and the driver's consent to the search. The officers then diligently pursued their investigation by conducting a search of the vehicle that ultimately revealed the cocaine base. We find that the length of this detention did not convert it into one for which probable cause was needed.

Davis contends that the officers lacked probable cause to arrest him after they discovered the cocaine base in the rental car and that any

3

subsequent statement he made should have been suppressed. Specifically, he claims that the presence of cocaine base in the car in which he was a passenger did not provide probable cause for his arrest and therefore any statement he made was tainted by his illegal arrest.

A warrantless arrest is valid if the arresting officers have probable cause to believe the suspect has committed an offense. The officers' decision that probable cause is present is reviewed under a totality of circumstances test. See Illinois v. Gates, 462 U.S. 213, 238 (1983). Both the quantity of information possessed by the officers and the degree of its reliability are factors to be considered. See Alabama v. White, 496 U.S. 325, 330 (1990). The district court's determination of probable cause should be sustained if the court had a substantial basis for its conclusion. See Gates, 462 U.S. at 236; United States v. Depew, 932 F.2d 324, 327 (4th Cir. 1991).

Based on the totality of the circumstances, the officers had probable cause to arrest Davis. Each occupant of the car gave a different story about their destination and the reason for their trip. They all appeared nervous during the search and their comments and actions led Sergeant T. L. Cardwell to believe they might flee.* In light of these facts, there was substantial evidence to support the district court's conclusion that the officers had probable cause to arrest Davis. Cf. United States v. Laughman, 618 F.2d 1067, 1077 (4th Cir. 1980) (where other circumstantial evidence is present, proximity to contraband with inferred knowledge of its presence sufficient to establish constructive possession).

II.

Davis contends that there was insufficient evidence to support the district court's finding that he possessed cocaine base on an earlier trip to South Carolina and that the court erred by including that amount when deciding his guideline range. The district court's factual findings are reviewed under the clearly erroneous standard, while its

_____

*One of the suspects asked an officer whether there was water beyond the woods adjoining the highway and, while scanning the area, the men discussed amongst themselves what they should do.

4

interpretation of guideline terms is reviewed de novo. <u>United States v. Daughtrey</u>, 874 F.2d 213, 217 (4th Cir. 1989).

District courts may take "relevant conduct" into account in determining a defendant's sentence whether or not the defendant has been convicted of the charges constituting the relevant conduct. <u>See</u> United States Sentencing Commission, <u>Guidelines Manual</u>, § 1B1.3 (Nov. 1995); <u>United States v. Jones</u>, 31 F.3d 1304, 1316 (4th Cir. 1994). The court must establish the amount of drugs attributable to a defendant for sentencing purposes by a preponderance of the evidence. <u>See</u> <u>United States v. Irvin</u>, 2 F.3d 72, 75 (4th Cir. 1993). Whether the government has met its burden of proof is a question of fact reviewed for clear error. <u>See Jones</u>, 31 F.3d at 1316 (citing <u>Daughtrey</u>, 874 F.2d at 217). In drug offenses where the defendant is acting in concert with others, his relevant conduct includes all his own acts and reasonably foreseeable acts of others which were part of the same course of conduct or common scheme or plan as the offense of conviction. <u>See</u> USSG § 1B1.3(a)(2). In determining whether conduct is part of the same course of conduct as the offense of conviction, the court looks to the nature of the defendant's acts, his role, and the number and frequency of those acts, as well as the similarity, regularity, and temporal proximity between the offense of conviction and the uncharged conduct. <u>See United States v. Mullins</u>, 971 F.2d 1138, 1143-44 (4th Cir. 1992); <u>see also</u> USSG § 1B1.3, comment. (n. 9(B)). The court may rely on the uncorroborated testimony of a coconspirator in determining a defendant's relevant conduct. <u>See United States v. Bowman</u>, 926 F.2d 380, 381 (4th Cir. 1991).

At Davis' sentencing hearing, William Davis testified that, two weeks before they were arrested in North Carolina, he, Michael Davis (his cousin), and Lloyd Stallworth delivered approximately two pounds of cocaine base from New York to Antonio Rubio's customer in South Carolina. According to William's testimony, the two trips were nearly identical: William paid Batala McFarlane to rent a car in Baltimore; he drove to New York to pick up the drugs and instructions from Rubio; he agreed to pay Davis and Stallworth $250 each to accompany him; and the cousins took turns driving. William also testified that while he removed the drugs from the wheel well of the rental car and delivered them to Rubio's customer on the first trip, Davis was facing them ten feet away.

5

Although Davis denied knowledge of the drugs and denied taking the first trip to South Carolina, the district court found William's testimony more credible. The court also noted the similarity in the two trips. Furthermore, as the government noted in its brief, William was to pay Davis $250 for each trip, evidence that Davis had knowledge of the criminal activity because there had to be a reason William was paying Davis to accompany him on the trip. In light of this evidence, the district court did not err in including the first trip to South Carolina as relevant conduct in calculating Davis' offense level.

III.

For these reasons, we affirm Davis' conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

6