# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

---

m 00-51233

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

JAVIER GOMEZ,

Defendant-Appellant.

---

Appeal from the United States District Court
for the Western District of Texas

---

December 20, 2001

Before JOLLY, SMITH, and BENAVIDES,
Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Javier Gomez challenges his conviction of conspiracy, possession of marihuana with intent to distribute, and maintaining a place for the purposes of possession and distribution of marihuana. We vacate and remand.

I.

Customs agents received a tip that a rental truck was parked outside Gomez's residence in El Paso, Texas. The agents previously had received information suggesting the house was being used as a narcotics "stash house."

When the agents arrived at Gomez's house, he refused them permission to search inside but consented to a search of the garage. When asked about the truck parked in his driveway, Gomez stated that it belonged to his cousin

and that a person named "Ben" had the keys.

Sergeant Tom Holloway entered the backyard when he saw Angel Valenzuela, Gomez's cousin, who informed Holloway that another nearby man, Benjamin Lowe, had the keys to the truck. Holloway advised Lowe that he was a police officer conducting an investigation and requested permission to search the truck. Lowe consented and gave Holloway the keys. The resulting search revealed that the back of the truck contained seven cardboard boxesSSover 170 poundsSSof marihuana. The agents also found marihuana and other potentially incriminating evidence inside Gomez's house.

After the discovery of the marihuana, the officers arrested Gomez, Valenzuela, and Lowe. They advised Gomez of his *Miranda* rights and began to question him. After telling two contradictory stories, Gomez eventually admitted that Valenzuela and Lowe had paid him $200 for permission to use his house to "store the dope" for eventual sale. The truck was determined to be a rental vehicle; the rental agreement was signed by Lowe and does not list Gomez as an authorized driver.

## II.

The district court suppressed all evidence obtained in the search of the house but admitted the evidence found in the truck, holding that Gomez lacked standing to challenge its admissibility. Gomez's conviction was based in large part on this evidence. On appeal, Gomez contends that the use of the evidence from the truck violated his Fourth Amendment rights. He also avers that the use of co-defendant testimony against him at trial violated his Sixth Amendment rights under the Confrontation Clause.

## III.

To establish standing to "contest the validity of a search under the Fourth Amendment," the defendant must prove that he has a "reasonable expectation of privacy." *United States v. Cardoza-Hinojosa*, 140 F.3d 610, 614 (5th Cir. 1996). In considering challenges to a ruling on a motion to suppress, "we must accept the district court's findings of underlying facts unless clearly erroneous." *Id.* at 613. "Questions of law, howeverSSincluding whether an expectation of privacy is reasonable under the circumstances . . .SSare reviewed de novo, as is the district court's ultimate determination of Fourth Amendment reasonableness." *Id.*

This case presents an issue of first impression: whether a homeowner has a reasonable expectation of privacy in a vehicle owned and operated by a third party but parked on the homeowner's driveway.[1] We conclude that Gomez had that expectation, but only because the evidence seized not only was in a truck parked on his property, but also was known to him because it was the subject of the unlawful enterprise in which he took part. We do not speculate on whether there would be standing in any other situation in which these factors were not present.

---

[1] The only two federal courts to have addressed the issue have concluded that a homeowner does have such an expectation. *See United States ex rel. Boyance v. Myers*, 270 F. Supp. 734, 742 (E.D. Pa. 1967) (holding that a defendant, "by reason of his ownership of the premises, has standing to challenge the search of [a third party's] . . . automobile while it was in the [defendant's] . . . driveway"), *rev'd on other grounds*, 398 F.2d 896 (3d Cir. 1968); *United States v. Costner*, 217 F. Supp. 644, 646 (E.D. Tenn. 1963) (same). Neither of these decisions provides substantial guidance, and neither is binding on us.

Whether there is standing to contest the validity of a search "depends on (1) whether the defendant is able to establish an actual, subjective expectation of privacy with respect to the place being searched or items being seized, and (2) whether that expectation of privacy is one which society would recognize as reasonable." *United States v. Kye Soo Lee*, 898 F.2d 1034, 1037-38 (5th Cir. 1990). Gomez had both a subjective and an objective expectation.

### A.

There is no real doubt that Gomez had a "subjective expectation of privacy with respect" to the truck parked in his driveway. *Id. at* 1037. Otherwise, he hardly would have been likely to allow Lowe and Valenzuela to stash the marihuana there while the truck was in his driveway. In any event, the government does not claim that Gomez fails this prong of the test.

### B.

The difficult question is whether Gomez's expectation of privacy in the truck "is one which society would recognize as reasonable." *Id.* at 1037-38. "Fourth amendment rights are individually held and cannot be asserted solely by reference to a particular place." *United States v. Vega*, 221 F.3d 789, 797 (5th Cir. 2000)*, cert. denied*, 531 U.S. 1155 (2001). Nonetheless, the fact that the truck was on Gomez's property is undeniably relevant to the question whether he had a reasonable expectation of privacy.[2] The "factors to be weighed include whether the defendant has a possessory interest in the thing seized or the place searched, whether he has the right to exclude others from that place, whether he has exhibited a subjective expectation that it would remain free from governmental invasion, whether he took normal precautions to maintain his privacy and whether he was legitimately on the premises." *United States v. Haydel*, 649 F.2d 1152, 1155 (5th Cir. Unit A Jul. 1981). No one circumstance has a decisive "talismanic" significance. *Id.*

The *Haydel* factors tilt in Gomez's favor. He had a strong possessory interest in "the place searched," *id.*, which was the real property on which his house was located. He plainly had the right to exclude others from the premises, which he owned, and thereby to exclude othersSSexcept possibly the renters of the truckSSfrom the truck by excluding them from the real property. Although apparently it was not Gomez who locked the truck, he had a subjective expectation of privacy in its contents; he obviously knew of the 170 pounds of marihuana stored there and was concerned that it not be discovered. The "normal precautions to maintain his privacy," *id.*, included having the truck parked on his property to protect that privacy. Finally, it is undeniable that Gomez was "legitimately on the premises," *id.*, of his own house.

Because of Gomez's possessory interest in the land, and particularly because he and his associates had an overriding interest in privacy

---

[2]*See, e.g.*, *Rakas v. Illinois*, 439 U.S. 128, 143 n.12 (1978) (noting that "one who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of his right to exclude"); *Alderman v.*
(continued...)

---

[2](...continued)
*United States*, 394 U.S. 165, 176-79 (1969) (holding that homeowner's property interest grants him standing to object to electronic surveillance of conversations in his home even if he was not a party to the conversations).

regarding the marihuana in the truck, we conclude, under the specific facts of this case, that he did indeed have a reasonable expectation of privacy sufficient to create standing for a Fourth Amendment challenge to the search of the truck.[3]

---

[3] Other circuits have gone further and have recognized standing by homeowners to challenge searches of containers found on their premises but owned by third parties. *See United States v. Cassity*, 720 F.2d 451, 457 (6th Cir. 1983) (holding that defendant had standing to challenge search of container stored in his home that he did not own or know the contents of), *vacated on other grounds*, 468 U.S. 1212 (1984); *United States v. Issacs*, 708 F.2d 1365, 1367-69 (9th Cir. 1983) (holding that defendant had legitimate expectation of privacy in contents of locked safe stored in his apartment but owned by third party who had the key); *United States v. Perez*, 700 F.2d 1232, 1236 (8th Cir. 1983) (holding that defendant could challenge search of luggage belonging to overnight guests staying in his house). Arguably to the contrary is *United States v. Garcia-Rosa*, 876 F.2d 209, 218-219 (1st Cir. 1989) (holding that defendant had standing to challenge seizure of a box found in his house and owned by a third party, but not to challenge the search of its contents), *vacated on other grounds sub nom. Rivera-Feliciano v. United States*, 498 U.S. 954 (1990).

We need not opine on the validity of these conclusions, for Gomez told the police that he had given Valenzuela and Lowe permission to store marihuana at his house; he therefore definitely knew of the contents of the truck. We need not, and do not, express a view on the expectation of privacy in the other cited cases, in which the defendants did not know the contents of the searched containers.

This case also is readily distinguishable from *Garcia-Rosa*. There, the court based its decision on the fact that the defendant had "failed to assert"

(continued...)

## IV.

Gomez also challenges his conviction on the ground that the district court allowed co-defendant testimony to be used against him in violation of the Sixth Amendment's Confrontation Clause, as explicated in *Bruton v. United States*, 391 U.S. 123 (1968), under which a defendant's right to confront witnesses "is violated when (1) several co-defendants are tried jointly, (2) one defendant's extrajudicial statement is used to implicate another defendant in the crime, and (3) the confessor does not take the stand and is thus not subject to cross-examination." *United States v. Restreppo*, 994 F.2d 173, 186 (5th Cir. 1993) (citing *Bruton*, 391 U.S. at 127). Gomez's claim falls short on the first prong of the test, because he was tried separately.[4]

The judgment of conviction is VACATED, and this matter is REMANDED for further proceedings.[5]

---

[3](...continued)
any expectation of privacy in the content of the box at his suppression hearing. *Id.* at 219. By contrast, Gomez asked the district court to suppress "[a]ll tangible evidence seized . . . in connection with the search of the residence . . . or in connection with the investigation of this case." Second, the *Garcia-Rosa* defendant may not have known of the contents of the box and in fact went "out of his way to" minimize his connection to it. *Id.*

[4] *See United States v. Briscoe*, 742 F.2d 842, 847 (5th Cir. 1984) (holding that "for *Bruton* to apply, . . . there must be a joint trial with co-defendants").

[5] We do not consider Gomez's argument that the search of the truck was "fruit of the poisonous tree" of the illegal search of his house and backyard. This issue was not raised in the district court, and the outcome may depend on facts not

(continued...)

---

[5](...continued)
fully developed in the suppression hearing. Nor do we consider the question whether there was consent to search. The government and Gomez are free to raise these and other issues on remand, as appropriate.

5