

# NUMBER 13-12-00696-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**JUAN FRANCISCO MALDONADO,**                                                    **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                    **Appellee.**

### On appeal from the 197th District Court
### of Willacy County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Valdez, and Justices Perkes and Longoria
### Memorandum Opinion by Justice Perkes

Appellant Juan Francisco Maldonado appeals his conviction for possession of a controlled substance with intent to deliver 400 grams or more of cocaine. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(f) (West, Westlaw through 2013 3d C.S.). Appellant pleaded guilty, and the trial court sentenced him to fifteen years in the Texas Department of Criminal Justice, Institutional Division. By three issues, appellant argues:

(1) his motion to suppress was improperly denied; (2) his motion to dismiss for failure to afford a speedy trial was improperly denied; and (3) his motion to dismiss for failure to comply with Article 32.01 was improperly denied. *See* TEX. CODE CRIM. PROC. ANN. § 32.01 (West, Westlaw through 2013 3d C.S.). We affirm.

## I. BACKGROUND

On September 21, 2009 DPS Narcotics Sergeant Jorge Lopez was working narcotics interdiction in Hidalgo County, Texas. At around 5:30 p.m., he was driving an unmarked vehicle on his way home when he noticed a clean, shiny, green tractor trailer, with Illinois license plates, having its signage changed on the cab's driver and passenger doors.

Sergeant Lopez testified that based upon his training and experience, he found it unusual the tractor trailer was based out of Illinois but having the signage changed in Texas. After further investigation, Sergeant Lopez discovered the company that owned the truck was a brand new company, and that it only owned one truck. According to Sergeant Lopez, this business arrangement is consistent with using tractor trailers to transport narcotics. Sergeant Lopez continued surveillance of the truck as it was loaded and noticed that appellant was the driver of the truck. Sergeant Lopez further noted that appellant was using his phone and pacing back and forth in front of the truck as it was being loaded.

After the truck was loaded, Sergeant Lopez and other agents followed the truck as it began to travel eastbound on highway 83 towards highway 281. Sergeant Lopez, believing that it was going to travel northbound on highway 281, called to prepare highway

2

patrol units to stop the truck. The truck, however, continued eastbound when it reached highway 281. Sergeant Lopez, with fellow agents, continued to follow the truck until it reached Harlingen, at which point the truck turned northbound onto highway 77.

DPS Trooper Eugenio Garcia was patrolling highway 77 in Willacy County, Texas, when he received a phone call from Sergeant Lopez. Sergeant Lopez advised Trooper Garcia that he was conducting an ongoing investigation on a green tractor trailer with Illinois plates, and asked Trooper Garcia to assist. Trooper Garcia observed a tractor trailer traveling northbound on highway 77 that matched the description given to him by Sergeant Lopez. Trooper Garcia pulled over the tractor trailer between 11:00 and 11:30 p.m. for a defective license plate lamp. Appellant was the truck's sole occupant.

While appellant was stopped, Sergeant Lopez arrived at the scene. Sergeant Lopez noticed that appellant appeared nervous. When Sergeant Lopez asked appellant about the changed signs on the truck, appellant answered that he paid cash for the job out of his own money, which Sergeant Lopez considered unusual. Based on appellants answer and nervous behavior, Sergeant Lopez decided to detain appellant for further questioning after Trooper Garcia issued a warning to appellant for the traffic violation.

Sergeant Lopez continued to speak with appellant, asking him questions related to his activities in Hidalgo County. Appellant told him that he was hired by a Chicago trucking company. Appellant first stated that he left the truck at the Flying J truck stop upon arriving in Hidalgo County, but later stated that he left the truck at a T/A truck stop. Appellant informed Sergeant Lopez that he had stayed the night with a girl named Jessica who he met on the internet, but that he did not have a phone number for her and did not

3

remember her address.

Appellant told Sergeant Lopez that this trip was his first for this company and that he personally paid for the flight from Orlando to Chicago to begin work. Sergeant Lopez questioned appellant about using his own money to pay for the flight and for the signs on the truck. Sergeant Lopez testified that appellant's story did not make sense. Sergeant Lopez then requested written consent to search the tractor-trailer. Appellant consented orally and signed a written consent form at 11:46 p.m. Sergeant Lopez searched the truck but did not find anything.

Sergeant Lopez asked appellant to follow him to a border patrol checkpoint in Falfurrias. Appellant agreed. After they arrived at the checkpoint, a drug-sniffing canine alerted positive for contraband. A border patrol agent then asked appellant for consent to have the tractor trailer x-rayed. Appellant consented. The x-ray revealed a hidden compartment in the wind jam of the cab that contained a hundred kilograms of cocaine. On September 22, 2009, appellant was placed under arrest based upon the discovery of narcotics in the truck.

On August 18, 2011, approximately 23 months after his arrest, a grand jury indicted appellant for the offense of possession with intent to deliver a controlled substance, namely, cocaine, in an amount of 400 grams or more. On September 27, 2011, appellant failed to appear at his arraignment. On August 28, 2012, appellant failed to appear at his status hearing, and the trial court scheduled a second arraignment. On September 6, 2012, the trial court held a second arraignment, but appellant again failed to appear. On September 25, 2012, appellant appeared before the trial court and pleaded not guilty.

4

On October 4, 2012, appellant filed a motion to suppress, motion for speedy trial, and motion to dismiss for failure to comply with Article 32.01. *See* TEX. CODE CRIM. PROC. ANN. art. 32.01 (West, Westlaw through 2013 3d C.S.). On October 29, 2012, the trial court denied all three motions. That same day, appellant pleaded guilty and was sentenced to fifteen years in prison.

## II. MOTION TO SUPPRESS

By his first issue, appellant argues the trial court improperly denied his motion to suppress. Appellant asserts that the seventeen minute[1] extension of his detention after the purpose of the initial traffic stop was completed resulted in an illegally extended detention. Appellant concludes that any search conducted after the initial traffic stop was concluded was illegal and that any evidence discovered during the search should be suppressed.

### A. Standard of Review

We review a trial court's ruling on a motion to suppress for an abuse of discretion. *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). In reviewing a trial court's ruling on a motion to suppress evidence for an abuse of discretion, we use a bifurcated standard. *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000) (en banc) (citing *Guzman v. State*, 955 S.W.2d 85, 88 (Tex. Crim. App. 1997) (en banc)). We give almost total deference to the trial court's findings of historical fact that are supported by the record and to mixed questions of law and fact that turn on an evaluation of credibility and

---

[1] Appellant states in his brief that seventeen minutes elapsed between the time Trooper Garcia issued the warning and the time Sergeant Lopez obtained appellant's consent to search the truck.

demeanor. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007) (citing *Guzman*, 995 S.W.2d at 89). We "review de novo 'mixed questions of law and fact' that do not depend upon credibility and demeanor." *Id.* (quoting *Montanez v. State*, 195 S.W.3d 101, 107 (Tex. Crim. App. 2006)); *Guzman*, 995 S.W.2d at 89. In our review, we must view the evidence in the light most favorable to the trial court's ruling. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court has not made a finding on a relevant fact, we imply the finding that supports the trial court's ruling if it is supported by the record. *Id.*

To suppress evidence on an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant. *Id.* Once the defendant has made this showing, the burden of proof shifts to the State where it is required to establish that the search or seizure was conducted pursuant to a warrant or was reasonable. *Id.; see Bishop v. State*, 85 S.W.3d 819, 822 (Tex. Crim. App. 2002) (en banc).

B. **Applicable Law**

We analyze the legality of traffic stops for Fourth Amendment purposes under the standard articulated by the United States Supreme Court in *Terry v. Ohio*. *United States v. Brigham*, 382 F.3d 500, 507–08 (5th Cir. 2004) (en banc); *see Terry v. Ohio*, 392 U.S. 1, 21–22 (1968); *United States v. Pack*, 612 F.3d 341, 349–350 (5th Cir. 2010); *Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004). Under this standard, we make a two-

6

part inquiry. *Brigham,* 382 F.3d at 506. First, we examine whether or not the officer's decision to stop the vehicle was justified at its inception. *Id.* Second, we determine whether or not the officer's subsequent actions were reasonably related in scope to the circumstances that caused him to stop the vehicle in the first place. *Id.* An officer's subsequent actions are not reasonably related in scope to the circumstances that caused him to stop the vehicle if he detains its occupants beyond the time needed to investigate the circumstances that caused the stop, unless the officer develops a reasonable suspicion of additional criminal activity in the meantime. *Id.* at 507. The United States Supreme Court has expressly rejected placing any rigid time limitations on Terry stops; instead, the issue is "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *Kothe v. State*, 152 S.W.3d at 64 (quoting *United States v. Sharpe,* 470 U.S. 675, 685–86 (1985) (declining to "establish a per se rule that a 20–minute detention is too long" under *Terry*).

Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead the officer to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity. *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001); *see Ford,* 158 S.W.3d at 492. Courts should not engage in a "divide and conquer" analysis of the facts, but should instead look at the totality of the circumstances to see if an officer had developed reasonable suspicion. *Sims v. State*, 98 S.W.3d 292, 296 (Tex. App.—

7

Houston [1st Dist.] 2003, pet. ref'd); *see United States v. Arvizu*, 534 U.S. 266, 273 (2002).

**C.     Analysis**

The parties stipulated that the search of appellant's vehicle was conducted without a search warrant.   Thus, the burden shifted to the State to establish that the search was reasonable.   *See Ford,* 158 S.W.3d at 492.

With respect to the first part of the *Terry* inquiry, we must determine whether the police had a reasonable suspicion to stop the vehicle and detain appellant.   *See Brigham,* 382 F.3d at 506.   Trooper Garcia pulled over appellant's tractor trailer for a defective license plate lamp and issued a warning to appellant for the traffic violation. Appellant does not challenge the initial stop on appeal.   As such, we conclude that the officer's decision to stop the vehicle was justified at its inception.

The second part of the *Terry* inquiry requires us to determine whether or not the officer's subsequent actions were reasonably related in scope to the circumstances that caused him to stop the vehicle in the first place.   Appellant argues that Sergeant Lopez's decision to detain him beyond the time it took to investigate the initial traffic stop violated *Terry.*   In support, he argues that the facts that emerged during Sergeant Lopez's investigation could not create a reasonable suspicion that appellant was engaged in drug trafficking.   Therefore, we must determine whether the facts show the development of a "reasonable suspicion of additional criminal activity" during the investigation of the initial traffic offense.

Sergeant Lopez relied on six facts that he claimed provided him with reasonable suspicion that appellant was involved in drug activity: (1) the brand-new Illinois company only owned one truck and only had one registered driver; (2) appellant was on his phone constantly while the truck was being loaded; (3) appellant drove a route that is unusual for a truck traveling from Hidalgo County to Illinois; (4) appellant appeared nervous when speaking with Sergeant Lopez; (4) appellant used his own cash to pay for the sign change on the truck and his flight from Orlando to Chicago; (5) appellant gave inconsistent accounts regarding the truck stop where he parked the truck for the weekend; and (6) appellant did not have an address or phone number for "Jessica."

Appellant contends that each fact by itself is not a criminal act. While certainly true that each fact may not by itself constitute a crime, such facts, when combined with permissible deductions, can form a legitimate basis for suspicion. *See Ford*, 158 S.W.3d at 494 (quoting *United States v. Cortez*, 449 U.S. 411, 419 (1981)). The facts observed prior to the stop—the changed markings, the ownership of the truck, the unusual phone usage during loading, and the route taken by the truck—are articulable and specific and justify the initial detention under the first part of *Terry*. The second set of facts justified appellants continued detention. The second set of facts include appellant's nervousness, appellant spending his own money for expenses, and the inconsistent stories pertaining to appellant's travel as well as "Jessica." With each additional fact that Sergeant Lopez observed at the scene, the suspicious nature of appellant's activity grew stronger. At the same time, Sergeant Lopez reasonably and gradually escalated the

9

nature of the intrusion in proportionate response to the level of the suspicious activity. *See United States v. Kye Soo Lee*, 898 F.2d 1034, 1040 (5th Cir. 1990).

The above described circumstances constitute specific and articulable facts which, taken together with rational inferences drawn therefrom are sufficient under *Terry* to justify a reasonable suspicion on the part of the officers that criminal activity was afoot. *See id*. Accordingly, Sergeant Lopez was justified in his initial and continued detention of appellant. *See id.*; *Terry,* 392 U.S. at 20. We overrule appellant's first issue.

### III.    SPEEDY TRIAL

Appellant argues he was deprived of his right to a speedy trial as guaranteed by the United States and Texas Constitutions because the State allowed twenty–three months to pass between the day of his arrest and the day of his indictment. We disagree.

#### A.    Standard of Review

In reviewing the trial court's ruling on appellant's federal constitutional speedy trial claim, we apply a bifurcated standard of review: an abuse of discretion standard for the factual components and a de novo standard for the legal components. *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002). We must presume the trial court resolved any disputed fact issues in the State's favor, and we must defer to the implied findings of fact that the record supports. *Id*.

#### B.    Applicable Law

The Sixth Amendment to the United States Constitution guarantees the accused's right to a speedy trial. *See* U.S. CONST. AMEND. VI. The United States Supreme Court has stated that, "On its face, the Speedy Trial Clause is written with such breadth that,

taken literally, it would forbid the government to delay the trial of an 'accused' for any reason at all." *Doggett v. United States,* 505 U.S. 647, 651 (1992). Thus, in *Barker v. Wingo*, the Court "qualified the literal sweep of the provision" by analyzing the constitutional question in terms of four specific factors: (1) whether delay before trial was uncommonly long; (2) whether the government or criminal defendant is more to blame for that delay; (3) whether, in due course, the defendant asserted his right to a speedy trial; and (4) whether the defendant suffered prejudice as the delay's result. *Barker v. Wingo*, 407 U.S. 514, 530–32, (1972).

Under *Barker*, courts must analyze federal constitutional speedy trial claims by first weighing the strength of each of the above factors and then balancing their relative weights in light of "the conduct of both the prosecution and the defendant." *Zamorano,* 84 S.W.3d at 648. None of the four factors is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." *Id.* Instead, they are related factors, which must be considered together along with any other relevant circumstances. *Id.* No one factor possesses "talismanic qualities," thus courts must "engage in a difficult and sensitive balancing process" in each individual case. *Id.*

## C.    Analysis

### 1.    Length of Delay

The length of delay is a "triggering mechanism" for analysis of the other *Barker* factors. *See Barker*, 407 U.S. at 530. In general, courts deem delay approaching one year to be "unreasonable enough to trigger the *Barker* enquiry." *Doggett,* 505 U.S. at 652. Here, appellant was arrested on September 22, 2009, and the hearing on his

speedy trial motion was held on October 29, 2012, approximately thirty–eight months later. This delay was sufficient to trigger the *Barker* enquiry. Further, the delay stretched far beyond the minimum needed to trigger the enquiry. *See id.* Consequently, this factor weighs in favor of finding a violation of the speedy trial right. *See Zamorano*, 84 S.W.3d at 649 ("Because the length of the delay stretched well beyond the bare minimum needed to trigger judicial examination of the [speedy trial] claim, this factor—in and of itself—weighs heavily against the State."); s*ee also Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003).

### 2. Reason for Delay

While the record is not clear on the exact reasons for the delay, the State alleges that most of the delay is attributable to appellant's actions. The State explained that prior to his indictment, appellant met with police under the guise of becoming an informant. Sometime thereafter, appellant fled and the police were unable to locate him. According to the State, their inability to locate appellant ultimately lead to appellant being indicted. The State further contended that after appellant was indicted, he contested his extradition. It is unclear how much delay was spent on extradition proceedings, but it is undisputed that appellant: (1) failed to appear in court on September 27, 2011; (2) failed to attend subsequent court appearances on August 28, 2012 and September 6, 2012; and (3) did not appear until he pleaded not guilty on September 25, 2012. Based on the reasons given by the State, it was reasonable for the trial court to presume a valid justification for the delay. *See id.* This factor weights against a speedy–trial violation.

### 3. Assertion of Right

A defendant's lack of a timely demand for a speedy trial indicates strongly that he did not really want a speedy trial. *See Harris v. State*, 827 S.W.2d 949, 957 (Tex. Crim. App. 1992) (en banc). Appellant failed to assert his right to a speedy trial for a period of thirty-eight months, and only did so immediately before trial. Appellant was represented by counsel at all relevant times and has raised no question regarding the competency of counsel. Further, appellant failed to give any reason for his delay in asserting his right. In view of the delay, in which appellant quietly acquiesced, this factor weighs against finding a violation of the speedy trial right. *See Dragoo*, 96 S.W.3d at 314–15.

### 4.    Prejudice to Defendant

The most important consideration in assessing the last *Barker* factor is whether appellant's defense was impaired by the delay. *See id.* at 315. We recognize that a thirty-eight month delay may be excessive and presumptively prejudicial to the defense. *See id.*; *Zamorano*, 84 S.W.3d at 654 (four year delay between defendant's arrest and trial was presumptively prejudicial to defense). However, we further recognize that such prejudice is offset by appellant's longtime acquiescence in the delay. *See Dragoo*, 96 S.W.3d at 315. Additionally, appellant failed to assert or otherwise provide any specific evidence that his defense was impaired in any way by the delay. Therefore, we hold that appellant was not prejudiced.

### 5.    Conclusion

In balancing the *Barker* factors, the fact that the delay may have been excessive weighs in favor of finding a violation of appellant's right to a speedy trial. However, weighing against appellant's challenge are the reasons offered by the State for the delay,

appellant's quiet acquiescence to the delay, and his failure to demonstrate prejudice by the delay. Such factors indicate he may not have really wanted a speedy trial.

We hold that the weight of the four factors, balanced together, is against finding a violation of appellant's right to a speedy trial. *See Barker*, 407 U.S. at 534 (defendant's right to speedy trial was not violated; defendant was not seriously prejudiced by five-year delay between arrest and trial); *Phipps v. State*, 630 S.W.2d 942, 946 (Tex. Crim. App. [Panel Op.] 1982) (defendant's right to speedy trial was not violated; defendant demonstrated no prejudice by four-year delay between arrest and trial, and waited until one month before trial to assert his right to a speedy trial). We overrule appellant's second issue.

## IV.    ARTICLE 32.01

By his third issue, appellant argues the trial court erred by denying his motion to dismiss for failure to comply with Article 32.01 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 32.01 (West, Westlaw through 2013 3d C.S.). Specifically, appellant appears to be asserting that his indictment was defective because it was not presented on or before the 180th day after his date of commitment. Appellant contends that since he was arrested on September 29, 2009, but not indicted until August 18, 2011, the trial court had no option but to dismiss the indictment. We disagree.

## A.    Applicable Law

When analyzing a decision that is based on a trial court's interpretation of a statute, we first construe the statute according to its plain language. *Tapps v. State*, 294 S.W.3d 175, 177 (Tex. Crim. App. 2009); *Williams v. State*, 253 S.W.3d 673, 677 (Tex. Crim. App.

14

2008).   Statutory construction is a question of law; thus, this Court conducts a de novo

review.   *Tapps*, 294 S.W.3d at 177.   Article 32.01 provides as follows:

> When a defendant has been detained in custody or held to bail for his
> appearance to answer any criminal accusation, the prosecution, unless
> otherwise ordered by the court, for good cause shown, supported by
> affidavit, shall be dismissed and the bail discharged, if indictment or
> information be not presented against such defendant on or before the last
> day of the next term of the court which is held after his commitment or
> admission to bail or on or before the 180th day after the date of commitment
> or admission to bail, whichever date is later.

TEX. CODE CRIM. PROC. ANN. art. 32.01.

"By operation, article 32.01 prevents citizens from being left in jail or on bail for

long periods of time without being indicted."   *Ex parte Martin,* 6 S.W.3d 524, 529 (Tex.

Crim. App. 1999).   "The statute gives a person held in custody without indictment a

means to obtain his release, because the statute requires the State to 'indict within the

period set by article 32.01, show good cause for the delay, or suffer the dismissal of the

charges.'"   *Schroeder v. State*, 307 S.W.3d 578, 579 (Tex. App.—Beaumont 2010, pet.

ref'd) (citing *Ex Parte Martin*, 6 S.W.3d at 529).

"Article 32.01 does not create a substantive right that frees a person from

prosecution for the commission of an offense."   *Id.* (citing *Ex parte Seidel*, 39 S.W.3d

221, 224 (Tex. Crim. App. 2001)).   Rather, "article 32.01 creates a procedural right to be

dismissed from custody under certain circumstances until the grand jury has been

presented with an indictment.   After the presentment to the grand jury of an indictment

on the offense at issue, article 32.01 is no longer applicable."   *Id.* (citing *Brooks v. State,*

990 S.W.2d 278, 285 (Tex. Crim. App. 1999); *Schroeder,* 307 S.W.3d at, 580)*.*

15

**B.    Analysis**

On September 22, 2009, appellant was arrested for possession of a controlled substance, after narcotics were discovered in his truck.[2]   On August 18, 2011, a grand jury indicted appellant for the offense.   On October 4, 2012, appellant filed a motion to dismiss for failure to comply with Article 32.01.

We hold the trial court did not abuse its discretion in denying appellant's motion to dismiss.   The record shows that appellant did not obtain a ruling on his motion to dismiss before the grand jury returned its indictment.   Because appellant had already been indicted by the grand jury when the trial court denied his motion to dismiss the indictment, a dismissal of his indictment was no longer required.   *See Brooks,* 990 S.W.2d at 285; *Schroeder,* 307 S.W.3d at 580.   We overrule appellant's third issue.

## V.    CONCLUSION

We affirm the judgment of the trial court.

GREGORY T. PERKES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
9th day of October, 2014.

---

[2] On September 22, 2009, appellant was apparently released on a personal recognizance bond, the day following his arrest.

16